KELLY RYAN, Petitioner, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for THE COUNTY OF CLARK, and THE HONORABLE JACKIE GLASS, District Judge, Respondents, and THE STATE OF NEVADA, Real Party in Interest.

No. 49114

October 11, 2007 · · · · · · · · · · · · · · · · · · · · · · · · · · · · · 168 P.3d 703

*Cristalli & Saggese, Ltd.*, and *Michael V. Cristalli*, Las Vegas, for Petitioner.

*Catherine Cortez Masto*, Attorney General, Carson City; *David J. Roger*, District Attorney, and *Robert J. Daskas*, Deputy District Attorney, Clark County, for Real Party in Interest.

Before the Court EN BANC.

## OPINION

By the Court, DOUGLAS, J.:

This is an original petition for a writ of mandamus challenging the district court's order denying petitioner Kelly Ryan's motion to substitute counsel. Kelly Ryan and her husband Craig Titus are accused of brutally murdering their roommate, stuffing her body in the trunk of their Jaguar, and setting the car on fire to cover up the alleged crimes.

Ryan seeks to have Michael Cristalli of Cristalli & Saggese represent her at trial. Cristalli's partner, Marc Saggese, already represents codefendant Titus, raising the specter of dual representation and the accompanying potential for conflicts of interest at trial.

The primary issue raised in the petition is whether the district court manifestly or arbitrarily and capriciously abused its discretion when it refused to substitute in Michael Cristalli as Ryan's counsel of choice. We grant Ryan's petition and issue a writ directing the district court to canvass both defendants to determine whether they knowingly, intelligently, and voluntarily waive their right to conflict-free representation. In doing so, we conclude that

a court must honor a criminal defendant's voluntary, knowing, and intelligent waiver of conflict-free representation so long as the conflicted representation will not interfere with the administration of justice. We also conclude that for a waiver of conflict-free representation to be effective, the defendant must also specifically waive the right to a mistrial as a result of her attorney's potential or actual conflict of interest depriving her of her right to effective assistance of counsel arising from the dual representation. Finally, we conclude that before engaging in dual representation, the attorney must advise the criminal defendant of her right to consult with independent counsel to review the potential conflicts of interest posed by the dual representation. If the defendant chooses not to seek independent counsel, then the defendant must expressly waive her right to do so before the defendant's waiver of conflict-free representation can be valid.

## RELEVANT FACTS AND PROCEDURAL HISTORY

In March 2006, the State obtained an indictment against Ryan and Titus, charging both defendants with the crimes of: (1) murder with the use of a deadly weapon, (2) kidnapping, (3) accessory to murder, and (4) third-degree arson. The charges related to the brutal murder of their roommate, Melissa Ann James. According to the State, Ryan and Titus may have implicated themselves and each other in the murder.

In September 2006, Ryan dismissed her counsel of record and substituted in Gregory Denue, Esq. The same month, Titus dismissed his lawyers and retained Marc Saggese, Esq., of Cristalli & Saggese. In February 2007, Denue filed a motion to substitute counsel, wherein Denue agreed to substitute in Michael Cristalli of Cristalli & Saggese as Ryan's defense counsel. Cristalli filed a memorandum of points and authorities in support of his firm's dual representation of Ryan and Titus. Cristalli relied on the dissenting opinion in *Wheat v. United States*[1] as support. Cristalli contended that in certain circumstances the trial court has discretion to allow dual or multiple representation, particularly where there are no apparent conflicts and the codefendants waive conflict-free representation.

The State filed an opposing memorandum of points and authorities. In summary, the State argued that (1) there was an actual conflict of interest because Ryan and Titus implicated themselves and each other in the crimes charged, (2) it would be impossible to predict what other potential conflicts of interest may arise during trial, (3) creating an artificial wall of conflict-free representation between Ryan and Titus would not remedy the conflict of interest, (4) any waiver by Ryan or Titus was likely invalid, and

[1] 486 U.S. 153 (1988).

(5) Cristalli & Saggese's dual representation would create a built-in ineffective-assistance-of-counsel issue.

The district court held a hearing on Ryan's motion for substitution. Cristalli explained that once he learned that Ryan sought to hire him as counsel, he immediately explained to her the "particulars" of his firm representing both defendants in the case.

Cristalli also submitted to the court a conflict-waiver letter drafted by Cristalli & Saggese and signed by both Ryan and Titus. The letter states, in pertinent part, that (1) neither defendant has implicated the other in the crimes charged; (2) after a thorough review of discovery and lengthy discussions with multiple counsel, neither defendant intends to plead guilty or cooperate with the State; (3) a joint defense agreement has been prepared to be executed by both defendants and both attorneys;[2] (4) either defendant's decision to cooperate with the State might change the firm's ability to continue representation; (5) in the event of a serious conflict or disagreement, the firm would be required to withdraw and represent neither defendant; and (6) the firm's withdrawal would be "inconvenient and potentially adverse to each [defendant]," but the defendants understood that the "present benefits of dual representation outweigh this contingent problem."

At the hearing, Cristalli argued that a future conflict could only arise if either Ryan or Titus decided to cooperate with the State, which he believed would not occur although he acknowledged that "theoretically, anything could happen." Cristalli argued that there was no conflict because there was a joint defense, but he stated, "Now, can there in the future arise a conflict? Absolutely. But the Courts have said specifically in *Wheat* we are not here to speculate on the potential for a conflict." At the conclusion of the hearing, the district court indicated that it would appoint advisory counsel to speak with Ryan regarding the potential conflicts of interest.

A few days later, the district court held another hearing on the motion for substitution. It indicated that it had appointed attorney William B. Terry to speak with Ryan about the dual representation, that Terry had spent a significant amount of time with Ryan, and that Terry had no meaningful dialogue with Ryan about the dual representation because it appeared that her mind was already made up.

Denue indicated that he had been approached by both Titus's mother and Titus's attorney and had been asked to sign a joint defense agreement.[3] Denue stated that he had refused to sign a joint defense agreement because he thought he would be harming his client if he did so.

---

[2] A joint defense agreement was subsequently submitted to the district court.

[3] It is unclear whether Saggese was the attorney who approached Denue about the joint defense agreement.

The State contended that the Sixth Amendment guarantees an effective advocate, not necessarily an advocate of one's choice. It argued that an inherent problem with dual representation is that the codefendants may be precluded from asserting their best defenses. The State criticized Cristalli's suggestion that he would deal with a conflict when it arises, because both Cristalli and Saggese would have to withdraw at trial and such a conflict would likely result in a mistrial. The State noted that because Ryan's statements indicated that Titus was involved in actually lighting the car on fire, Ryan's best defense would be that Titus committed the arson, not her.

The district court then canvassed Ryan on the ramifications of dual representation:

> THE COURT: So, Ms. Ryan, as you stand here today, you have been provided with a copy of the letter regarding affiliated representation and also the joint-defense agreement. Those both discuss in detail the subject matter of why we're here today; is that right?
>
> DEFENDANT RYAN: Yes, your Honor.
>
> THE COURT: Okay. And it's your position at this point that you still wish to have the representation of Mr. Cristalli despite the fact that there have been discussions about—
>
> (Colloquy not on the record)
>
> THE COURT: —what could happen or could not happen as a result of having the same law firm represent you.
>
> DEFENDANT RYAN: Yes, your Honor.
>
> THE COURT: And you wish to waive at this point any conflict; is that right?
>
> DEFENDANT RYAN: That is correct.

The district court then canvassed Titus on whether he understood the ramifications of dual representation:

> THE COURT: All right. Mr. Titus, now I get to ask you a question. You've just heard the same questions that I spoke to Ms. Ryan about.
>
> And you've been provided a copy of the February 22nd affiliated-representation letter as well as the February 22nd joint-defense agreement; is that correct?
>
> DEFENDANT TITUS: Yes, ma'am.
>
> THE COURT: And you've read them over.
>
> DEFENDANT TITUS: Yes, ma'am.
>
> THE COURT: And you understand what's in them?
>
> DEFENDANT TITUS: Absolutely.
>
> THE COURT: Okay. And is it your position after reviewing these documents and talking to Mr. Saggese that you also wish to waive any potential conflict; is that right?
>
> DEFENDANT TITUS: Yes, ma'am.

The district court then stated that it had reviewed the briefs, the Nevada Rules of Professional Conduct, and the *Wheat* case. The district court noted that it strongly believed in an individual's right to choose their own counsel, but that the district court had an "obligation to make sure that this case goes to trial, that there is effective and fair representation of all parties, and, hopefully, we have an error-free record, so that we only have to do this one time."

The district court then quoted a few paragraphs from *Wheat*, which provided that district courts had broad discretion to refuse conflict waivers:

> The district court must recognize a presumption in favor of the petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of an actual conflict, but by a showing of a serious potential for conflict.
>
> The evaluation of the facts and circumstances of each case under this standard must be left primarily for the informed judgment of the trial court.[4]

The district court reasoned that even if there was a consistent defense throughout trial, the specter of ineffective assistance of counsel would surely haunt the appeal. The district court also concluded that if the joint defense agreement did not present an actual conflict, it did pose a very serious potential for conflict. Further, the district court stated that it was very troubled that Terry did not have a meaningful dialogue with Ryan as to her understanding of dual representation and its implications, especially when Ryan and Titus were facing potential life sentences if convicted.

The district court consequently ruled that there was an actual or serious potential conflict inherent in the dual representation, and issued a written order denying Ryan's request for substitution of counsel. Ryan now petitions this court for a writ of mandamus.

## DISCUSSION

*Standard of review*

This court may issue a writ of mandamus to compel the performance of an act which the law requires.[5] A writ of mandamus should only issue to control discretionary actions when the district court has manifestly or arbitrarily and capriciously abused its discretion.[6]

---

[4]The district court quoted *Wheat*, 486 U.S. at 164.

[5]NRS 34.160.

[6]*Washoe County Dist. Attorney v. Dist. Ct.*, 116 Nev. 629, 636, 5 P.3d 562, 566 (2000); *see also City of Sparks v. District Court*, 112 Nev. 952, 954, 920 P.2d 1014, 1015-16 (1996).

### Sixth Amendment right to counsel

Under the Sixth Amendment, criminal defendants "who can afford to retain counsel have a qualified right to obtain counsel of their choice."[7] However, the "essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."[8] Thus, the right to retain one's own counsel may clash with the right to conflict-free representation, and the presumption in favor of the right to retain the counsel of one's choice.[9]

### Right to conflict-free representation must be exercised or waived by the defendant

Because there can be a benefit in a joint defense against common criminal charges, there is no per se rule against dual representation.[10] The Second Circuit Court of Appeals concluded in *United States v. Perez* that "[w]here the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government."[11] However, the right to choose one's own counsel may clash with the right to conflict-free representation, and the presumption in favor of the right to choose one's counsel "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict."[12] The district court is afforded broad discretion in making conflict determinations, and

> the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.[13]

This is not to say that courts have unfettered discretion to reject a defendant's right to choose counsel where a potential conflict exists.

[7]*United States v. Ray*, 731 F.2d 1361, 1365 (9th Cir. 1984).

[8]*Wheat*, 486 U.S. at 159.

[9]*Id.* at 164.

[10]*Holloway v. Arkansas*, 435 U.S. 475, 482-83 (1978).

[11]325 F.3d 115, 125 (2d Cir. 2003).

[12]*Wheat*, 486 U.S. at 164.

[13]*Id.* at 163.

Undoubtedly, even if Cristalli & Saggese's dual representation of Ryan and Titus does not raise an actual conflict, it raises the potential for serious conflict during trial. Depending on the course of events prior to and during trial, either defendant could testify against the other, imposing the inescapable duty of vigorous cross-examination by the other defendant's counsel. Although speculative at best, the potential is still troublesome; if the joint defense were to fall apart, regardless of the cause or motive, it could be nearly fatal to the ability of Cristalli & Saggese to represent either defendant. However, Ryan and Titus appear eager to present a unified front against the prosecution and have expressed as much through their joint defense agreement and waiver of conflict-free representation.

The Eighth Circuit Court of Appeals recently concluded that (1) as a general rule, non-indigent criminal defendants have a Sixth Amendment right to be represented by counsel of their own choice; (2) courts are afforded little leeway in interfering with that choice; (3) a non-indigent criminal defendant's right to retain private counsel of her choice directly derives from her Sixth Amendment right to determine the type of defense that she wishes to present; and (4) where a non-indigent criminal defendant's choice of counsel threatens to interfere with the administration of justice, the district court must carefully balance the defendant's Sixth Amendment right to be represented by counsel of her choosing against the court's interest in the orderly administration of justice.[14] The Eighth Circuit noted that " '[l]awyers are not fungible, and often the most important decision a defendant makes in shaping his defense is his selection of an attorney.' "[15] The Eighth Circuit concluded that attorneys are not interchangeable because

> [w]ithin the range of effective advocacy, attorneys will differ as to their trial strategy, oratory style, and the importance they place on certain legal issues. They may also differ with respect to expertise in certain areas of law, and experience or familiarity with opposing counsel and the judge. These differences will impact a trial in every way the presence or absence of counsel impacts a trial.[16]

This reasoning is persuasive insofar as it addresses the constitutional magnitude of denying a non-indigent defendant's right to choose her own counsel in favor of imposing conflict-free representation. The California Court of Appeal most aptly described the

---

[14]*U.S. v. Gonzalez-Lopez*, 399 F.3d 924, 928-29 (8th Cir. 2005), *aff'd and remanded*, 548 U.S. 140 (2006).

[15]*Id.* at 928 (quoting *U.S. v. Mendoza-Salgado*, 964 F.2d 993, 1014 (10th Cir. 1992)).

[16]*Id.* at 934 (citation omitted).

hazards of imposing rights on defendants when it quoted John Stuart Mill's observation that

> "[i]n each person's own concerns[,] his individual spontaneity is entitled to free exercise. Considerations to aid his judgment, exhortations to strengthen his will may be offered to him, even obtruded on him, by others; but he himself is the final judge. All errors which he is likely to commit against advice and warning are far outweighed by the evil of allowing others to constrain him to what they deem his good."[17]

Thus, although the district court has broad discretion to balance a non-indigent criminal defendant's right to choose her own counsel against the administration of justice, we conclude that there is a strong presumption in favor of a non-indigent criminal defendant's right to counsel of her own choosing.[18] This presumption should rarely yield to the imposition of involuntary conflict-free representation. Ryan and Titus must be advised of the pitfalls and potential horrors of conflicted dual representation, but once so advised they cannot be forced to embrace their right to conflict-free representation when they would prefer to waive it in order to pursue the defense strategy of their choosing.[19] If, however, they knowingly, intelligently, and voluntarily embrace a potentially conflicted dual representation, the conflict of interest is forever waived.[20]

---

[17]*Alcocer v. Superior Court (People)*, 254 Cal. Rptr. 72, 74-75 (Ct. App. 1988) (quoting John Stuart Mill, *On Liberty* 93 (Bobbs-Merrill ed. 1956)).

[18]*See U.S. v. Amini*, 149 F.R.D. 647, 651 (D. Utah 1993) (holding that in the absence of a strong showing of adverse impact on the administration of justice, speculative or potential conflicts are not enough to overcome the strong presumption favoring the defendant's choice of counsel).

[19]As for RPC 1.7 and RPC 1.10(a), an attorney's ethical obligation to avoid conflicts of interest does not preclude criminal defendants from selecting counsel of their choosing, so long as the conflicted counsel agrees to the representation.

[20]We are aware of the cases cited by the State, *U.S. v. Stites*, 56 F.3d 1020, 1025 (9th Cir. 1995) (holding that where a district court finds an actual conflict, it may decline a preferred waiver); *U.S. v. Shwayder*, 312 F.3d 1109, 1117 (9th Cir. 2002) (concluding that the defendant's waiver of conflict of interest was not valid where he was not adequately informed of the significance of the conflicts that might arise); *Coles v. Arizona Charlie's*, 973 F. Supp. 971, 975 (D. Nev. 1997) (holding that any doubts as to the existence of a conflict of interest should be resolved in favor of disqualification); *Carter v. State*, 102 Nev. 164, 170, 717 P.2d 1111, 1114 (1986) (concluding that a defendant's right of waiver cannot preclude a trial court from declaring a mistrial "when there is a manifest necessity for doing so"); *Clark v. State*, 108 Nev. 324, 326, 831 P.2d 1374, 1376 (1992) (holding that "[a]n actual conflict of interest which adversely affects a lawyer's performance will result in a presumption of prejudice to the defendant"); *Harvey v. State*, 96 Nev. 850, 852, 619 P.2d 1214, 1216 (1980) (noting that joint representation presents a number of risks,

Thus, we further conclude that when a defendant knowingly, intelligently, and voluntarily waives her right to conflict-free representation, she also waives her right to seek a mistrial arising out of such conflicted representation. Further, the waiver is binding on the defendant throughout trial, on appeal, and in habeas proceedings.[21] Thus, the defendant cannot subsequently seek a mistrial arising out of the conflict that he waived and "cannot [subsequently] be heard to complain that the conflict he waived resulted in ineffective assistance of counsel."[22] We therefore overrule our prior holding in *Hayes v. State*[23] to the extent that it empowers the district court to declare a mistrial due to a conflict of interest in the face of a knowing, intelligent, and voluntary waiver of conflict-free representation.

After reviewing the record, it appears the district court was not convinced that Ryan's and Titus's waivers of conflict-free counsel were knowing, intelligent, and voluntary. The district court noted at the hearing and in the written order that it was troubled by the fact that Terry failed to have a meaningful dialogue with Ryan about the consequences of dual representation and the potentially serious conflicts that may arise. The district court seemed concerned that Ryan's mind was made up before she consulted with Terry.

Consequently, in granting this petition in part, we direct the district court to conduct an extended canvass to determine whether Ryan and Titus have made a knowing, intelligent, and voluntary waiver of their right to conflict-free representation.[24] Ryan and

---

" 'the possibility of inconsistent pleas; factually inconsistent alibis; conflicts in testimony; differences in degree of involvement in the crime; tactical admission of evidence; the calling, cross-examination, and impeachment of witnesses; strategy in final argument; and the possibility of guilt by association' " (quoting *State v. Olsen*, 258 N.W.2d 898, 905 (Minn. 1977) (footnotes omitted))); *Koza v. District Court*, 99 Nev. 535, 540-41, 665 P.2d 244, 247 (1983) (concluding that the district court abused its discretion in appointing the public defender to represent defendant where the defendant had a conflict with a former client). However, we conclude these cases are distinguishable.

[21]*Gomez v. Ahitow*, 29 F.3d 1128, 1135-36 (7th Cir. 1994) (holding that where the defendant knowingly and intelligently waives the right to conflict-free counsel, the waiver precludes claims of ineffective assistance of counsel based on the conflict).

[22]*Id.* at 1135.

[23]106 Nev. 543, 797 P.2d 962 (1990).

[24]We note that our holding today does not disturb the district court's discretion to reject a valid waiver when dual representation would interfere with the administration of justice. However, fear of a mistrial is no longer an adequate ground to reject a knowing, intelligent, and voluntary waiver of the right to conflict-free representation.

Titus must also be advised that a waiver of the right to conflict-free representation means that they cannot seek a mistrial or raise claims of ineffective assistance of counsel based on any conflict caused by the dual representation. If these elements are satisfied, then Cristalli & Saggese may be allowed to engage in the dual representation of these two defendants.

*Attorneys must advise criminal defendants of the right to seek independent counsel before the client agrees to waive conflict-free representation*

Nevada Rule of Professional Conduct 1.7 prohibits lawyers from engaging in dual representation if the representation involves a concurrent conflict of interest or a significant risk that the dual representation will materially limit the lawyer's ability to represent one or both clients. Pursuant to RPC 1.7(b)(4), the attorney must also secure the informed consent of each affected client in writing before engaging in the dual representation.[25]

A waiver of conflict-free representation entails the waiver of certain important rights at trial, on appeal, and in post-conviction proceedings, including waiver of the right to seek a mistrial based on any conflicts arising from the dual representation. Consequently, we now require attorneys to advise criminal defendants of their right to consult with independent counsel to advise them on the potential conflict of interest and the consequences of waiving the right to conflict-free representation. The attorney must advise the clients to seek the advice of independent counsel before the attorney engages in the dual representation. If the clients choose not to seek the advice of independent counsel, the clients must expressly waive the right to do so before agreeing to any waiver of conflict-free representation. If the attorney fails to advise criminal defendants of their right to seek the advice of independent counsel, the clients' waivers of conflict-free representation are ineffective unless and until the attorney advises the clients to seek the advice of independent counsel and the clients do so or expressly waive the right to do so.

## CONCLUSION

We conclude that there is a strong presumption in favor of a non-indigent criminal defendant's right to choose counsel and, therefore, when a non-indigent criminal defendant's choice of counsel results in dual or multiple representation of clients with potentially

---

[25]RPC 1.10(a) further prohibits lawyers associated with the same firm from "represent[ing] a client when any one of them practicing alone would be prohibited from doing so."

conflicting interests, the defendant may waive the right to conflict-free counsel. An attorney or firm attempting to engage in dual or multiple representation of two or more criminal defendants must advise the defendants of their right to seek independent counsel to advise them on the potential conflict of interest. If the defendants choose not to seek the advice of independent counsel, they must expressly waive their right to do so, or their waiver of conflict-free representation will be ineffective. When a defendant knowingly, intelligently, and voluntarily waives the right to conflict-free representation, the district court must accept the waiver. Once the district court accepts the waiver, the defendant cannot subsequently seek a mistrial arising out of the conflict that he waived and cannot subsequently claim that the conflict he waived resulted in ineffective assistance of counsel.

We grant Ryan's petition for a writ of mandamus in part and direct the clerk of this court to issue a writ of mandamus directing the district court to hold a new canvass of both defendants. The new canvass must ensure that the defendants understand that their waiver of conflict-free representation will preclude them from seeking a mistrial arising out of any conflicts from the dual representation and will preclude claims based on the conflict from being raised on appeal or during post-conviction proceedings. The waiver must be knowing, intelligent, and voluntary.

GIBBONS, HARDESTY, PARRAGUIRRE, CHERRY and SAITTA, JJ., concur.

MAUPIN, C. J., dissenting:

While the majority has developed a legal construct for dual representation in criminal cases that comports with Sixth Amendment standards, I see no abuse of discretion by the district court in relation to those standards.

To explain, it is readily apparent from this record that the attorneys seeking our embrace of their dual representation may have misperceived their obligation to ensure that petitioner's decision was knowing, intelligent, and voluntary. This is underscored by the representation to the justice court below by one of these attorneys that "once he learned that [Ms.] Ryan sought to hire him as counsel, he immediately explained to her the 'particulars' of his firm representing both petitioner and her co-defendant at trial." There is no indication in this record that this interaction involved access to independent counsel. The misperception is further underscored by counsels' submission of the "conflict waiver letter" signed by petitioner, which was *drafted by them* and likewise obtained without any indication that independent counsel was retained in connection with petitioner's execution of it. Of great importance is the fact that the letter affirms that neither petitioner nor her codefen-

dant intended to plead guilty or cooperate with the police. While acknowledging that petitioner and her codefendant had engaged in discussions with "multiple" counsel concerning this issue, the execution of the letter and the record is devoid of any indication that petitioner executed the letter based upon independent advice of an attorney with no interest in her codefendant's defense. More problematic is the section of this letter that represented that "neither defendant has implicated the other in the crimes charged."[1] In short, petitioner's ultimate agreement submitted to the court was a *fait accompli*, and was generated by her codefendant's attorney at a time when the codefendant apparently needed petitioner's cooperation.

Moreover, the letter acknowledges that conflicts requiring withdrawal of joint counsel could occur. While not of necessity a ground for denying the application for joint representation, counsel's statement in this regard demonstrates that the joint approach may not last. This acknowledgment certainly justified the district court's reliance on the following passage in *Wheat v. United States*:[2]

> The District Court must recognize a presumption in favor of the petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.[3]

Considering counsels' acknowledgement of "trouble ahead" with their failure to have independent counsel involved at the time of their discussions of joint representation with petitioner, I cannot see how she can now ever appropriately waive her right to conflict-free representation. And, notwithstanding our majority's statement that proper waiver can eventuate, under these circumstances, there will remain an issue to be resolved on post-conviction relief, in the event of a conviction at trial, concerning effectiveness of her counsel during the current proceedings.

I want to stress that there is no indication in the record that proposed joint counsel in any way intentionally set out to subvert the legal processes of the trial court. Rather, I believe that this attempt at joint representation has been mismanaged and that, had appropriate independent advice been provided at the outset, petitioner's waiver of conflict-free representation could be approved.

---

[1] Petitioner has, at least to a degree, implicated her codefendant in these matters.

[2] 486 U.S. 153 (1988).

[3] *Id.* at 164.