**IN THE COURT OF APPEALS OF IOWA**

No. 14-2007
Filed October 28, 2015

**OSCAR IBARRA,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

        Oscar Ibarra appeals from the denial of his application for postconviction relief. **AFFIRMED.**

        Alfredo Parrish of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry, Brown & Bergmann, LLP, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, John P. Sarcone, County Attorney, and Michael T. Hunter, Assistant County Attorney, for appellee State.

        Heard by Potterfield, P.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

Oscar Ibarra, charged with murder, was represented by two public defenders. That same public defender office had represented the decedent and concurrently represented the State's primary witness against Ibarra. Ibarra's trial counsel themselves had not represented either. The trial court conducted a conflict-of-interests hearing pursuant to *State v. Watson*, 620 N.W.2d 233 (Iowa 2000). Ibarra and the State's witness waived the conflict of interest, and the district court concluded that the public defenders could continue to represent Ibarra. A jury found Ibarra guilty of murder in the first degree, and we affirmed on appeal. *State v. Ibarra*, No. 12-0330, 2013 WL 530558 (Iowa Ct. App. Feb. 13, 2013).

Ibarra's application for postconviction relief (PCR) was denied, and on appeal he asserts his trial counsel was ineffective in two respects. First, he argues his trial counsel was required to advise him he could or should request advice from independent counsel before waiving any conflict of interest with his trial counsel's office's dual representation of him and a State's witness. He asserts the alleged error is such that prejudice must be presumed, either under existing case law or a structural-error analysis, but he alternatively argues he was prejudiced as a result of the alleged error. Second, he argues his trial counsel failed to reasonably pursue his intoxication defense. We affirm.

## I. *Background Facts and Proceedings.*

In 2011, Patrick Wilson died after he was stabbed fifteen times, "including a fatal wound to his heart and a wound that went completely through his forearm and could be considered a defensive wound." *See Ibarra*, 2013 WL 530558, at

*1-4. Ibarra was subsequently charged with first-degree murder for Wilson's death, and he applied for court-appointed counsel. Thereafter, two public defenders with the Des Moines Adult Public Defender Office ("public defender office") were appointed to represent Ibarra.[1] *See id.* at *1, 5-7. Ibarra ultimately acknowledged he stabbed Wilson, but he asserted his actions were done in self-defense and as a result of his intoxication. *See id.* at *1, 10.

One of the trial witnesses named by the State was Cody Brown, a friend of Ibarra's who had been with Ibarra and mutual friends the day of Wilson's murder. *See id.* at *2-4. Brown was considered a "critical witness" by the State. The State learned Brown had been previously represented by the public defender office on three separate occasions on two different criminal matters, albeit by different attorneys than those representing Ibarra. *See id.* at *8 n.4. After Brown was deposed by Ibarra's trial counsel in August 2011, Brown was again represented by the public defender office on a probation matter. *See id.* at *7. The State also learned the public defender office had represented Wilson, the victim, in 2009 in a criminal matter, again by different attorneys within that office.

Prior to trial, the State contacted trial counsel, concerned trial counsel may have had a conflict of interest because the public defender office had represented Brown, and Brown was "a fairly big [S]tate's witness." Trial counsel ran the issue first by the State Appellate Defender via email. The State Appellate Defender doubted a real conflict existed, since it was unlikely that the public defender office's prior representation of Brown yielded any real confidential information that could be used against Brown in cross-examination. It was

---

[1] We collectively refer to Ibarra's two attorneys in the singular as "trial counsel."

advised that trial counsel not discuss Ibarra's case with the public defender office's attorneys representing Brown.

Thereafter, the State requested a hearing to determine whether the public defender office had a conflict of interest, given that office's representation of Ibarra, Brown, and Wilson, and a hearing was set. *See id.* at *6-7. Trial counsel then advised the State Public Defender that the State had requested the hearing and that the State Appellate Defender did not believe there was an actual conflict. Trial counsel also stated she had spoken with Ibarra the day before and he did "waive any potential conflict." The State Public Defender advised he agreed with the State Appellate Defender, "that if we didn't learn anything during those past representations, there's no actual conflict and any potential conflict should be addressed by walling off the three other attorneys involved from any involvement with [Ibarra's] case."

The hearing on the potential conflict of interest followed. There, the prosecutor advised the court: "It is the State's position that there is a conflict given that [the public defender] office has represented Mr. Brown on three occasions and that he is such an important witness. [The State does not] know how there could not be a conflict." The prosecutor noted trial counsel might be able to continue representing Ibarra "with some type of a waiver or substitute counsel or a Chinese wall," or but it was not asking for any of those options because Brown was "such a critical witness it is [a] big problem for [trial counsel]." The State was concerned that if Ibarra got "a bad result," the conflict issue may come up again after trial in an appeal or PCR proceedings. The State also suggested that a separate attorney be appointed for Brown to talk to Brown

about the possible conflict, but it was never suggested that the same be done for Ibarra.

Ibarra's trial counsel argued no conflict of interest existed. Trial counsel advised the court the matter had been previously discussed with Ibarra,

> [b]asically kind of what the nature of these proceedings are; the issue that [trial counsel is] dealing with regarding that [another attorney] with [the public defender] office had represented Cody Brown about the time of the deposition in August of this year, and why this could possibly be a potential or actual conflict; why we are having this proceeding verbally on Monday and also before we started today. He stated to me orally that he would waive that conflict, and we can make that inquiry later.

Trial counsel stated she had not consulted the attorneys representing Brown and Wilson concerning the merits of Brown's and Wilson's cases, nor had trial counsel obtained or looked at those clients' files. Additionally, trial counsel advised the court that the State Appellate Defender had been consulted on the issue and perceived no conflict of interest. *See id.* at *7. Trial counsel noted Brown's case was now concluded, and she did not "see that he has any adverse [e]ffect," but left "that to the discretion of the court." Trial counsel then conducted the following colloquy with Ibarra on the record to confirm he wished to waive any conflict of interest:

> Q: Mr. Ibarra, would you agree we had a conversation on Monday and also today regarding the procedure today? A: Yes.
> Q: And do you understand that from our conversation that what we are here today for, Mr. Ibarra, is we were discussing that Cody Brown, we know from the deposition, that, if you recall back on August 18th when he came in, that he was in custody for a probation violation. Do you recall that? A: Yes.
> Q: And what the issue is, the County Attorney is bringing up, is that . . . an attorney in our . . . office that works with [trial counsel] . . . actually took care of [Brown's] probation violation on August 23rd of this year. What the issue becomes is because that [attorney] is with our office, what the County Attorney is raising is

whether our office—[trial counsel's] representation of you is either an actual or potential conflict because we represented a defense witness and a state witness at the same time. Do you understand that? A: Yes.

Q: And where the issue becomes is, as your attorneys, we ethically try and advocate for you zealously on every single witness. Meaning when Mr. Brown is called as a [S]tate's witness, [trial counsel has] the ethical duty to cross-examine him, for example, on his criminal history. Do you understand that? A: Yes.

Q: And the issue the County Attorney is pointing out is becoming—is that they have concerns that, obviously, we can, because other attorneys in our office have worked with him, that we could have access to his files or talk about anything that they talked about during that proceeding. Do you understand that? A: Yes.

Q: And it would be my position that we have not looked at those files. We don't intend on looking at those files. We have not had any discussions with [Brown's attorneys in the public defender office regarding Brown's] cases, so that is where we feel we don't have a conflict with that. Do you understand that? A: Yes.

Q: And it would be [trial counsel's] position that we can still continue with you at all stages of the proceedings and at trial and cross-examine and—every witness listed by the State that would come to trial on your behalf effectively. Do you understand that? A: Yes.

Q: And at this point in time, would you waive any potential or actual conflict that [the public defender office] would have in, number one, representing you and also representing Cody Brown either before this murder case or during this murder case? A: Yes.

Following the hearing, the district court entered an order requiring further inquiry of Brown's "willingness to waive any potential conflict of interest, at least with certain safeguards in place." *Id.* at *8. The court explained it was troubled with the potential conflict of interest:

It is difficult for the court to see how there is not a serious potential conflict of interest—if not an actual conflict of interest—based upon the record made. It is clear from reading [Brown's deposition] that his criminal background and substance abuse history will be an integral part of his examination and cross-examination at trial. It is further clear that [Ibarra's trial counsel] plan[s] to make [Wilson's] use and history of alcohol and illegal drugs a part of the case. In both instances, the potential exists for the members of the [public defender office] to have access to information that would otherwise be privileged.

*See id.* at *6-7. The court was also troubled that neither trial counsel nor the State Appellate Defender perceived a conflict-of-interest existed. *See id.* at *7. To avoid a potential reversal on a finding of the existence of a conflict of interest, the district court appointed the Polk County Juvenile Public Defender to determine Brown's wishes and report them to the court. *See id.* at *8. However, the court made no such recommendation or requirement concerning Ibarra, such as seeking the advice of independent counsel to advise him of the consequences of waiving the conflict of interest, conducting its own colloquy to ensure Ibarra understood the right he was waiving, or requiring Ibarra sign a written waiver explaining such to him. Instead, the court simply ordered that Ibarra's trial counsel "have no access to any of the public defender files concerning either Brown or Wilson and that the public defender's office take 'all steps necessary to ensure that confidential information pertaining to either Brown or [Wilson] is not communicated' to Ibarra's [trial counsel]," s*ee id.*, thus ordering the erection of a so-called "Chinese Wall." *See Doe ex rel. Doe v. Perry Cmty. Sch. Dist.*, 650 N.W.2d 594, 598 (Iowa 2002) (discussing the use of Chinese Walls "to prevent disqualification of the entire law firm in various circumstances").

Brown subsequently made a written statement waiving any potential conflict of interest, and the court thereafter entered a supplemental order finding there was "no need for disqualification of the public defender office, or for appointment of a separate attorney to cross examine [Brown] at trial." *Ibarra*, 2013 WL 530558, at *8. The court "ordered the public defender to continue to follow the previous order not to examine any client files of Brown or Wilson in

connection with the case," and Ibarra's trial counsel continued their representation of Ibarra. *Id.*

A jury trial was subsequently held, and Ibarra presented his justification and intoxication defenses. *See id.* at *1. The jury found Ibarra guilty of first-degree murder. *See id.*

Ibarra appealed his conviction, asserting his trial counsel had an impermissible conflict-of-interest and challenging the sufficiency of the evidence, among other things, and we affirmed. *See id.* On the conflict-of-interest issue, we concluded that although Ibarra's trial counsel had not personally represented Brown or Wilson, the public defender office had represented Wilson and was representing "Brown, a witness adverse to Ibarra's interests," causing a conflict of other members of the public defender office that was imputed to Ibarra's trial counsel. *See id.* at *8. Nevertheless, relying upon *State v. Smitherman*, 733 N.W.2d 341, 346 (Iowa 2007), we found the conflict did not require reversal because Ibarra failed to show his trial counsel's performance was adversely affected by the alleged conflict of interest in this case. *See id.* at *8-9. Additionally, we found substantial evidence was presented at trial to support the jury's verdict. *See id.* at *10-12.

In May 2013, Ibarra filed his application for PCR. Ibarra argued his trial counsel was ineffective in numerous respects, including failing to seek appointment of independent counsel to advise him concerning the conflict-of-interest issue before waiving the conflict, as well as failing to investigate and present evidence of his intoxication, history of alcohol abuse, and depression in

support of his intoxication defense. Following a hearing, the PCR court denied Ibarra's PCR application. Ibarra now appeals.

## II. Ineffective Assistance of Counsel.

Generally, we review postconviction proceedings for errors at law. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). However, applications that raise an ineffective-assistance-of-counsel claim present a constitutional challenge, which we review de novo. *Id.*

## III. Discussion.

### A. Conflict of Interest.[2]

Ibarra's arguments regarding the conflict-of-interest issue are as follows. Because we found on direct appeal there was a conflict-of-interest, this finding is "binding in these proceedings as the law of the case."[3] Because of said conflict, trial counsel had a duty to advise him to seek the advice of independent counsel

---

[2] We tend to agree with the State that this issue was raised and addressed on direct appeal, though Ibarra seems to put a fresh spin on it. *See Ibarra*, 2013 WL 530558, at *8-9. As to the prejudice issue, we have already held "[t]here is nothing in the record to suggest defense counsel's performance was affected by a conflict of interest." *Id.* at *9. Furthermore, we concluded "[t]here is also no connection between the alleged conflict and the alleged deficiencies in Ibarra's defense . . . . Because Ibarra has not shown his counsel was adversely affected by a conflict of interest, his constitutional rights to conflict-free counsel were not violated." *Id.* Nevertheless, we choose to address the argument due to updated conflict-of-interest case law and because we find the claim is still without merit, to avoid any future PCR claims.

[3] We note Justice Waterman's special concurrence in the recent *State v. McKinley* opinion points out that the Iowa Supreme Court has not "settle[d] the recurring legal issue" of "whether an individual public defender's conflict of interest is automatically imputed to the entire public defender's office." 860 N.W.2d 874, 886 (Iowa 2015) (Waterman, J., concurring specially). He specifically cited this court's application of the automatic-imputation rule in our opinion on Ibarra's direct appeal finding a conflict of interest existed in that case. *Id.* at 889 (quoting *Ibarra*, 2013 WL 530558, at *8). The supreme court declined to address the issue in Ibarra's case as Ibarra's application for further review from our February 13, 2013 opinion affirming his conviction was denied by the supreme court. However, *McKinley* clearly suggests, without saying, that there is no automatic imputation of conflicts of interest to the entire public defender office. *Id.* at 886.

before he waived any conflict of interest. Because Ibarra was not explicitly so advised, he argues he was "effectively without counsel" during the conflict-of-interest proceedings and could not be said to have knowingly, voluntarily, and intelligently waived his constitutional right to non-conflicted counsel. He maintains that

> had he been told he could have received such advice, he would have done so. He waived the conflict because . . . he thought [his trial counsel] knew what they were doing, and he trusted them. He did not understand the nature or consequence of the conflict or what he was waiving.

He further contends this alleged error, either under existing case law or a structural-error analysis, requires prejudice to him be presumed. Alternatively, Ibarra asserts the error was prejudicial to him. For the reasons that follow, we disagree.

"The Sixth Amendment provides that 'in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." *State v. Young*, 863 N.W.2d 249, 256 (Iowa 2015) (quoting U.S. Const. amend. VI). The Assistance of Counsel clause generally includes several rights: the right to effective assistance of counsel, *see State v. Ambrose*, 861 N.W.2d 550, 556 (Iowa 2015); the right to appointed counsel, *see Young*, 863 N.W.2d at 250; the right to conflict-free counsel, *Smitherman*, 733 N.W.2d at 349; and the right to counsel of choice, *see McKinley*, 860 N.W.2d at 879, including the right to represent oneself, *see State v. Johnson*, 756 N.W.2d 682, 687 (Iowa 2008). Many of these rights are implicated here.

Despite the numerous principles embodied within the Sixth Amendment, its "essential aim . . . is to guarantee an effective advocate for each criminal

defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Consequently, the differing interests of the Sixth Amendment may at times conflict. *See id.*; *McKinley*, 860 N.W.2d at 880; *see also Watson*, 620 N.W.2d at 235. For instance, an indigent defendant has the right to appointed counsel, but that defendant does not have the right to choose who the appointed attorney will be, at least initially. *See McKinley*, 860 N.W.2d at 879. Similarly, a defendant's right to choose a particular attorney can be trumped by the district court's finding that that attorney presents an actual conflict or a serious potential for conflict-of-interest. *See id.* at 880. And, as the Supreme Court observed in *Wheat*, trial courts confronted with such conflict-of-interest issues "face the prospect of being 'whip-sawed' by assertions of error no matter which way they rule." 486 U.S. at 161-62. If a trial court allows the representation by a particular attorney to continue where a potential conflict may arise, and counsel's performance is later impaired as a result of the conflict, "the defendant may well claim that he did not receive effective assistance." *Id.* Yet, if a trial court does not accept a defendant's waiver of a conflict of interest, the defendant may well claim his right to choice of counsel was denied. *See id.* At the same time, as is the case here, accepting the defendant's waiver may still result in an ineffective-assistance claim. *See id.*

Ibarra directs us to *Watson*, wherein our supreme court found that Watson's trial counsel's actual conflict of interest required reversal of Watson's conviction and a new trial. 620 N.W.2d at 241-42. In that case, Watson's trial attorney also represented a key prosecution witness, and no conflict-of-interest

issue was raised prior to or at trial by anyone, even though the witness testified at trial about being represented by the same attorney. *See id.* at 234-35. After reviewing numerous conflict-of-interest cases, the court held

> that where the trial court knew or should have known of a particular conflict, reversal is required without a showing that the conflict adversely affected counsel's performance, even though no objection was made at trial . . . . If the trial court knows that a particular conflict exists and fails to conduct an inquiry, it should not matter what the source of the court's knowledge is. Regardless of how the trial court becomes aware of the conflict, the defendant has been denied his right to independent counsel. It is only in cases of uncertainty, where the record shows the mere *possibility* of a conflict, that the additional requirement of an adverse effect on counsel's performance is required to establish an *actual* conflict.

*Id.* at 237-38. Because there was an actual conflict that the trial court knew or should have known of but failed to sua sponte hold a hearing on the propriety of Watson's attorney's representation, the supreme court held reversal of Watson's conviction was mandated, and it remanded the matter "for a new trial where [Watson] shall be represented by counsel unburdened by a conflict of interest." *Id.* at 242.

Ibarra argues that under *Watson*, reversal of his conviction and a new trial are required. However, our conflict-of-interest jurisprudence has been updated and clarified since *Watson*. After *Watson*, the United States Supreme Court handed down *Mickens v. Taylor*, 535 U.S. 162 (2002). There, Mickens's attorney had represented Mickens and his alleged victim; the trial court had knowledge of the potential conflict but failed to inquire into the potential conflict. *Id.* at 164-65. Contrary to *Watson's* holding requiring automatic reversal under similar circumstances, the Supreme Court

concluded that even where the trial court fails to inquire into a potential conflict of which it should have been aware, the defendant still has to establish that the alleged conflict materialized into an *actual* conflict. The Court stated a defendant demonstrates an actual conflict by showing that the conflict adversely affected his counsel's performance.

*State v. Vaughan*, 859 N.W.2d 492, 500 (Iowa 2015) (discussing *Mickens*, 535 U.S. at 171-74).

In 2007, our supreme court decided *Smitherman*, 733 N.W.2d at 341. *Smitherman* was summarized by the *Vaughn* court as follows:

a public defender represented both the defendant and an individual who later came forth as a witness for the State. The public defender withdrew from representing the witness and the public defender's office replaced the specific attorney and screened him from working on the defendant's case as well. At a hearing on the conflict, the court determined the public defender's office's continued representation of the defendant did not create an impermissible conflict of interest. The defendant did not object to the representation at the time, but alleged on appeal that his state and federal constitutional rights had been violated by the public defender's office's simultaneous representation of himself and the witness.

*Vaughan*, 859 N.W.2d at 500-01 (internal citations omitted) (discussing *Smitherman*, 733 N.W.2d at 343-45). The court recognized its *Watson* holding under the Sixth Amendment was impacted by the *Mickens* decision. *Smitherman*, 733 N.W.2d at 347. The court went on:

While we were willing to presume prejudice without requiring adverse effect in *Watson*, we believe the facts of *Watson* are sufficiently distinguishable from this case so the reasons behind our holding in *Watson*, even if still viable after *Mickens* under our state constitution, are not applicable here. Under the circumstances in this case, we hold Smitherman must show adverse effect in order to prevail under either the Sixth Amendment or article I, section 10 of the Iowa constitution.

*Id.* In its conclusion, the *Smitherman* court stated:

> We need not determine the validity of the defendant's alleged waiver because we find the defendant has failed to show his counsel's performance was adversely affected by the alleged conflict of interest in this case. As a result, he has not established a violation under the Sixth Amendment or the Iowa constitution and is not entitled to a new trial.

*Id.* at 350.

More recently, our supreme court decided *Vaughan*, 859 N.W.2d at 492. There, a public defender was appointed to represent Vaughan and was also appointed to represent Cline in an unrelated case. *Id.* at 495. Some four months before Vaughan's trial, Cline was listed as a State's witness in Vaughan's case, and the public defender immediately "filed a motion to withdraw from representing Vaughan on behalf of the public defender's office, indicating that office had a conflict of interest due to the fact it represented a witness against Vaughan." *Id.* at 495-96. The motion was granted and another attorney was appointed to represent Vaughan that same day. *Id.* at 496. On appeal, Vaughan argued "[the public defender's] simultaneous representation of Cline and Vaughan from May to August 2012 resulted in an impermissible conflict of interest," and in the absence of a *Watson* hearing, required reversal. *Id.* at 501. The court indicated the absence of a *Watson* hearing seemed beside the point when Vaughn received *Watson* relief. *Id.* Specifically, the court expounded that "[w]hen a *Watson* hearing occurs, *Smitherman* requires the defendant demonstrate an adverse effect on counsel's performance resulting from an actual conflict of interest; reversal is not automatic." *Id.* at 501 (citing *Smitherman*, 733 N.W.2d at 347-48). The conflict was remedied before trial—Vaughan's attorney was replaced with conflict-free counsel—and Vaughan failed to "demonstrate that

the conflict had an adverse effect on counsel's performance to warrant a new trial"; hence, the court rejected Vaughan's claim on appeal that the lack of a formal *Watson* hearing presumes the defendant is prejudiced and reversal is automatically required. *Id.*

*McKinley*, 860 N.W.2d at 874, was decided a month after *Vaughan*. In circumstances similar to the case at hand, McKinley was appointed two public defender attorneys. *Id.* at 876. Long before trial, they discovered other attorneys in their office had previously represented three potential State's witnesses in matters unrelated to McKinley's criminal charge. *Id.* at 876-77. McKinley's attorneys requested a hearing to determine whether a conflict existed requiring their disqualification. *Id.* at 877. Independent counsels were appointed for the potential witnesses. *Id.* McKinley's attorneys argued their colleagues' past representation of the three potential witnesses on unrelated matters had concluded well before McKinley was charged so there was no concurrent representation. *Id.* McKinley's attorneys also assured the court they had no information about the matters concerning the three potential witnesses, had not reviewed the files pertaining to those matters, and that they instituted measures to prevent them from accessing any information pertaining to those matters. *Id.* McKinley's attorneys "contended any potential conflict of interest arising from the prior representations of the three witnesses by other attorneys in the [public defender's] office should not be imputed to them." *Id.* Additionally, McKinley, in a colloquy with the court, expressly acquiesced in any potential conflict of interest and indicated his desire to have his public defender counsel continue to represent him. *Id.* He also "filed a document confirming his acquiescence in any

potential conflict and reaffirming his wish for continued representation by" his counsel. *Id.* Two of the potential witnesses declined to consent to the public defenders' representation of McKinley. *Id.* The State urged the court to disqualify the entire public defender's office. *Id.* The district court concluded a conflict of interest disqualified all attorneys at the public defender's office from serving as McKinley's counsel. *Id.* at 878.

On appeal the supreme court reversed and remanded, concluding "the circumstances of this case do not rise to the level of an actual conflict." *Id.* at 879. After an analysis under *Watson*, *Mickens*, and *Smitherman*, and the applicable ethical rules and standards, and the lack of temporal overlap or attorney overlap, the court concluded:

> The district court's decision disqualifying [McKinley's trial counsel] based primarily on an erroneous application of provisions of the Iowa Rules of Professional Conduct constitutes an untenable ground for the court's exercise of discretion. Under the relevant caselaw and our rules of professional conduct, the prior representation of witnesses in unrelated matters by other members of the public defender's office did not present an actual conflict or a serious potential for conflict that justifies the order disqualifying [McKinley's trial counsel] and countermanding McKinley's interest in continuing an attorney-client relationship.

*Id.* at 886.

Though not explicitly stated or treated as such, the *Watson* court essentially held the conflict-of-interest error in that case was structural, requiring the presumption of prejudice. *See Watson,* 620 N.W.2d. at 237-38. However, as previously discussed, *Watson*, though not formally overruled, has since been distinguished in ways applicable here. *See Vaughan*, 859 N.W.2d at 499-500 (discussing *Mickens*, 535 U.S. at 173-74, *Smitherman*, 733 N.W.2d at 347, and

*Watson*, 620 N.W.2d at 234, 241-42). *Vaughan* and *Smitherman* can be interpreted to indicate that if a *Watson* hearing is held pretrial or *Watson* relief is granted sans hearing, a conflict found posttrial is not a structural error in and of itself requiring reversal. *See id.* (discussing *Smitherman*, 733 N.W.2d at 347). Rather, to warrant reversal, a defendant must go further and prove the conflict actually affected counsel's representation of the defendant. *See id.* The Sixth Amendment only guarantees that a criminal defendant receive an "effective advocate." *Wheat*, 486 U.S. at 159. It does not guarantee perfect representation. *See State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). Requiring automatic reversal when a conflict exists that did not affect counsel's performance makes little policy sense in light of the demands of the Sixth Amendment. *See Mickens*, 535 U.S. at 173-74. Given that a *Watson*-type hearing was held here in an attempt to ensure Ibarra received effective representation, we find no reason to stray from *Smitherman* and *Vaughan*.[4] To warrant reversal on the conflict issue, Ibarra must prove the conflict actually adversely affected his counsel's representation.

### B. Validity of Waiver.

In an effort to sidestep the prejudice requirement discussed above, Ibarra attacks the validity of his waiver of trial counsel's conflict of interest. Ibarra argues trial counsel's and the trial court's failure to advise him that he could or should seek the advice of independent counsel on whether he should waive any

---

[4] Other jurisdictions have also held that an ineffective-assistance-of-counsel claim premised on a structural "violation still requires a defendant to demonstrate actual prejudice." *See, e.g.*, *People v. Vaughn*, 821 N.W.2d 288, 307-08 (Mich. 2012) (discussing other cases).

potential conflict of interest is an error that affects the very framework of the process because of the conflict and the denial of representation by independent counsel at a crucial stage of the proceeding. He passionately argues:

> To the extent Ibarra was advised of the risks of proceeding with the public defender's office, he was advised by a participant in the conflict, and one with no evident expertise, as shown by the failure to make a meaningful record. Facing the absolute loss of his liberty, Ibarra was advised on a most critical matter of independent counsel by an agent of the organization whose effective ability and loyalty was being questioned. Ibarra lacked both the knowledge and autonomy to ask the tough questions of his counsel that might have given him some meaningful understanding of the risks inherent in his counsel's conflicts. For that he needed truly independent counsel, like that given Brown. Without another knowledgeable and experienced voice on which he could rely, Ibarra could not obtain a full view of the issue on which his trial representation hinged.

Ibarra claims that he "was effectively without counsel during [the] conflict of interest proceedings" and "[f]rom these circumstances, prejudice must be presumed, and a new trial ordered." However, we need not determine the validity of Ibarra's waiver because we find, as discussed below, he has failed to show his counsel's performance was adversely affected by the alleged conflict of interest in this case. *See Smitherman*, 733 N.W.2d at 350 ("We need not determine the validity of the defendant's alleged waiver because we find the defendant has failed to show his counsel's performance was adversely affected by the alleged conflict of interest in this case.").

### C. Prejudice Resulting from Conflict.

After the *Watson* hearing, the district court determined there was no need for disqualification of Ibarra's trial counsel, i.e., that the public defender office's continued representation of Ibarra did not create an impermissible conflict of

interest. Under such circumstances, as discussed above, Ibarra must show an adverse effect on counsel's performance in order to prevail under either the Sixth Amendment or article I, section 10 of the Iowa constitution. *See Smitherman*, 733 N.W.2d at 347. On our previous review of this case, we concluded "[t]here is nothing in the record to suggest defense counsel's performance was affected by a conflict of interest." *Ibarra*, 2013 WL 530558, at *9. On our second review of the case, we stand on our original conclusion. Ibarra has failed to establish a showing of prejudice as required by *Smitherman* and it progeny.

### D. Ineffective Assistance of Counsel.

Ineffective-assistance-of-counsel claims are analyzed under the familiar two-prong test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015); *State v. Ross*, 845 N.W.2d 692, 697-98 (Iowa 2014). To succeed on his claim of ineffective assistance, Ibarra must prove both that (1) his counsel failed to perform an essential duty, and (2) he suffered prejudice as a result of his counsel's failure. *See Dempsey*, 860 N.W.2d at 868.

For the sake of Ibarra's argument here, we assume without deciding his trial counsel had a duty to inform him he could or should seek appointment of independent counsel to advise him on whether or not he should waive any conflict of interest and what that waiver might entail.[5] Consequently, Ibarra must show he suffered prejudice as a result of his counsel's breach of duty.

---

[5] Ibarra points to other jurisdictions that have specified that in similar circumstances, trial counsel or the trial court must advise a defendant of the opportunity to seek the advice of independent counsel when considering waiving a conflict of interest and must make a detailed record that the defendant fully understands his right and the

Generally, the prejudice part of the test requires the applicant to establish by a preponderance of the evidence that prejudice resulted from counsel's failure to perform an essential duty. *See id.* This is shown by proving that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *See id.* "In determining whether this standard has been met, we must consider the totality of the evidence, what factual findings would have been affected by counsel's errors, and whether the effect was pervasive or isolated and trivial." *Id.* (citation and internal quotation marks omitted). With these principles in mind, we turn now to Ibarra's allegations concerning his trial counsel's ineffective performance.

Ibarra only claims that if he had been advised he could have sought independent counsel, he would have done so. He does not claim that he would not have waived the conflict, nor does he make any assertions that his trial counsel's representation of him in trial was affected by the conflict. Indeed, it

implications of waiver of the conflict, including the inability to later appeal based upon the waived conflict, citing *Alcocer v. Superior Court*, 206 Cal. App. 3d 951 (Cal. Ct. App. 1988), and *Ryan v. Eighth Judicial District Court*, 168 P.3d 703 (Nev. 2007). In both of these cases, the defendants waived any potential conflict of interest and advised the courts they wished to proceed with their current counsel. *See Alcocer*, 206 Cal. App. 3d at 961; *Ryan*, 168 P.3d at 707. In both cases, the trial courts found the potential conflict of the defendants' chosen attorneys too great to overcome the defendants' waivers of any conflict, and the courts denied the defendants their chosen counsel. *See Alcocer*, 206 Cal. App. 3d at 956; *Ryan*, 168 P.3d at 707. In both cases, the defendants appealed the ruling prior to their trials, and the appellate courts reversed the trial courts' rulings and remanding for the courts to make a more detailed record of the defendants' waivers. *See Alcocer*, 206 Cal. App. 3d at 961-64; *Ryan*, 168 P.3d at 707-11. Both cases gave instructions to the attorneys and trial courts on what the waiver needed to include to be sufficient, including advising the defendants of the opportunity to seek the advice of independent counsel on waiving the potential conflict. *See id.*

Perhaps a better practice would be to follow the directions of these cases for seeking and approving a defendant's waiver of a potential conflict-of-interest issue, but we need not decide that here, since a hearing was held on the matter, Ibarra waived any conflict, and trial was held. After the fact, as discussed above, Ibarra must now demonstrate that his trial counsel's performance was negatively affected by the conflict. *See Vaughan*, 859 N.W.2d at 499-501.

appears he has no bases to make any of those claims on this record. Ibarra's trial attorneys never represented Brown directly, nor was Brown's representation by other attorneys within the public defender office related to Ibarra's case. This is a stark contrast from *Watson*, where the same attorney represented the defendant and the witness, and the attorney's representation appeared to be hindered by his dual representation. *See* 620 N.W.2d at 234, 241-42. Here, the trial court ordered a "Chinese wall" constructed to prevent Ibarra's attorneys from gaining access to Brown's files in the public defender office or information from other attorneys in that office, and there is no evidence that Ibarra's attorneys' cross-examination of Brown was hindered by Brown's representation by other attorneys within the public defender office. Moreover, the fact the public defender office changed its rules after Ibarra's appeal does not show that Ibarra was prejudiced by his trial counsel's representation. Because Ibarra failed to show he was prejudiced by the conflict, we agree with the PCR court that Ibarra's ineffective-assistance-of-counsel claim concerning the conflict also fails.

### E. Intoxication Defense.

Ibarra also claims his trial counsel was ineffective for failing to fully investigate and present evidence of his intoxication relevant to that defense, such as his history of alcohol abuse and depression. He basically argues his counsel could have presented more information, such as his treatment records or an expert. He asserts this information "may well have been the tipping point for a not guilty verdict without exposing Ibarra to any risk." However, we concur with the PCR court's assessment:

> The record is replete with references, arguments and testimony relating to [Ibarra's] drinking and intoxication in the hours preceding the incident. Not every issue requires expert testimony to have gravity. Here, the expert testified concerning the effects of drugs which may be unknown to the laity. The effects of alcohol, on the other hand, are well within their common experience.
>
> Trial counsel may well have determined, as the record supports, that there was sufficient evidence for a jury to conclude that [Ibarra] was intoxicated to the point of being unable to form specific intent. That they relied on the lay testimony . . . and used an expert to focus on the victim's drug use is not unreasonable. It falls within that discretion and flexibility that must be accorded to a trial lawyer. With 20/20 hindsight, one can always find more that could have been done, or done differently. That is not the question, but whether enough was done to further the theory of the defense. It was.

Moreover, even assuming without deciding his trial counsel breached a duty in failing to gather and introduce more evidence, Ibarra has not established the requisite prejudice. Like the PCR court, we are not persuaded that, but for calling an expert concerning Ibarra's intoxication and a little additional evidence concerning Ibarra's history of alcohol use, the result of this trial would have been any different. Here, the evidence showed:

> Ibarra was told many times to leave the Wilson property. He returned on more than one occasion, the final time after others present had left. Ibarra was seen crouching by Wilson's vehicle, and jumped out and attacked Wilson. He struck Wilson and continued to do so after Wilson begged him to stop. In addition, we note the violent nature of Wilson's death—numerous stab wounds, some of which were very deep. These facts belie self-defense and provide substantial evidence from which the jury could find deliberation, premeditation, and malice aforethought.

See Ibarra, 2013 WL 530558, at *8-9. Considering the totality of the evidence, we agree there is not a reasonable probability that the result of the proceeding would have been different had this information been included. Accordingly, we

agree with the PCR court that Ibarra's ineffective-assistance-of-counsel claim concerning his intoxication defense also fails.

### IV. Conclusion.

Ibarra was required to establish he was prejudiced by his trial counsel's conflict of interest. However, Ibarra failed to establish any prejudice on either of his claims of ineffective assistance of counsel. Accordingly, we affirm the PCR court's ruling denying Ibarra's application for PCR.

**AFFIRMED.**