**Ricky CARTER, Appellant,**

v.

**Bill ARMONTROUT, Appellee.**

**No. 90–1416.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1990.

Decided April 9, 1991.

Rehearing and Rehearing En Banc Denied May 30, 1991.

E. Michael Murphy, St. Louis, Mo., for appellant.

Ronald Jurgeson, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before McMILLIAN, and BEAM, Circuit Judges, and ROSENBAUM,* District Judge.

BEAM, Circuit Judge.

Ricky Carter appeals from the district court's denial of his petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254 (1988). He asserts that the district court erroneously denied relief on two of the claims raised in his petition and incorrectly found that two other claims were procedurally barred. We affirm.

---

* The HONORABLE JAMES M. ROSENBAUM, United States District Court Judge for the District of Minnesota, sitting by designation.

In May of 1984, Carter was convicted in Missouri state court of forcible rape and sentenced, as a persistent sexual offender, to thirty years imprisonment. At trial, the victim's testimony revealed that Carter, Larry Walker and several other men forced her to engage in various sexual acts. The victim stated that she initially had sexual intercourse with Carter after he threatened: "[I]f you don't co-operate, I'll bust your brains out with that hammer." [1] Trial Transcript at 31. The assault, which occurred at Larry Walker's home, continued for several hours.

The Missouri Court of Appeals affirmed Carter's conviction. *State v. Carter*, 689 S.W.2d 780 (Mo.Ct.App.1985). His state court motion for post-conviction relief was denied. *Carter v. State*, 758 S.W.2d 150 (Mo.Ct.App.1988). He then filed this action, and the district court, adopting the report and recommendation of the magistrate judge, denied relief. Carter takes exception to the district court's adverse rulings on three points: 1) whether the trial court's failure to declare a mistrial following the introduction of a hearsay statement denied him a fair trial; 2) whether his counsel's failure to request a jury instruction defining "serious physical injury" constituted constitutionally ineffective assistance of counsel; and 3) whether his claims that his attorney continued to represent him despite a conflict of interest and that the victim's underpants were improperly received into evidence were procedurally barred.

### A. Due Process

Carter asserts that his right to a fair trial was violated when the trial court failed to order a mistrial after a police officer, in response to questioning about why he did not enter Walker's house to seize the hammer allegedly used during the assault, stated: "It was his residence and at the time we did not have a search warrant but he [Walker] said he would obtain the weapon that was used during the inci-

dent and return it and bring it to us." Trial Transcript at 218–19. Carter objected after the statement was made, but did not request a mistrial. The court sustained the objection and directed the jury to disregard the statement. Carter argues that the statement was the only corroboration for the victim's testimony. He contends that he was denied a fair trial because the jury could have inferred from this statement that an eyewitness, Walker, who did not testify, corroborated her story.

 Under 28 U.S.C. section 2254 this court's power to review state convictions is limited. Habeas corpus relief is available only where errors of constitutional magnitude have occurred. *See Newlon v. Armontrout*, 885 F.2d 1328, 1336 (8th Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990). Whether evidence was properly admitted is a question of state law reviewable on habeas only when a specific constitutional right is infringed "or [the evidence] is so prejudicial that it amounts to a denial of due process." *Manning–El v. Wyrick*, 738 F.2d 321, 322 (8th Cir.), *cert. denied*, 469 U.S. 919, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984). A petitioner must show more than error requiring reversal on direct appeal to obtain relief. He must show that the alleged error rendered the entire trial fundamentally unfair—"that there is a 'reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety, the verdict probably would have been different.'" *Newlon*, 885 F.2d at 1337 (quoting *Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir.) (en banc), *cert. denied*, 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987)).

 Here, the trial court sustained Carter's objection and instructed the jury to disregard the statement. This was the sole relief Carter requested. In fact, Carter's trial counsel testified at the state post-conviction proceeding that she did not want a

---

1. The victim testified that Carter had the hammer in his hand and that it had a wooden handle and a metal part. Trial Transcript at 31–32. The wooden handle was received into

evidence without a metal head, *id.* at 218–21, and other testimony indicated that it had not had a head on it for several years. *Id.* at 319.

mistrial at that point. 27.26 Hearing Transcript at 57. Further, in light of the other evidence received—the hammer itself and the victim's testimony—and the curative instruction which was given, there is no reasonable probability that the verdict would have been different had the jury not heard the statement. We doubt that the trial court erred in not sua sponte granting a mistrial.[2] In any event, Carter's trial was not fundamentally unfair.

**B. Ineffective assistance of counsel**

█ Carter also contends that his trial attorney was constitutionally ineffective because she failed to request a jury instruction defining "serious physical injury." Instruction Five, which was the verdict director for forcible rape, provided, in part, that the jury could convict Carter if the jury found that he had sexual intercourse with the victim "without her consent by the use of forcible compulsion." Forcible compulsion was defined in Instruction Nine as "either (a) Physical force that overcomes reasonable resistance, or (b) A threat, expressed or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of herself or another person." At the time of Carter's trial, serious physical injury was defined as "physical injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." Missouri Approved Instructions—Criminal § 33.01 (2d ed. 1979)

(MAI–CR 2d). The accompanying Notes on Use required that serious physical injury be defined whenever the phrase appeared in jury instructions. *Id.* § 20.02.1 n. 3. Carter asserts that, under Missouri law, serious physical injury was not a phrase of common usage and his attorney was ineffective in not requesting that it be defined.

Under Missouri law, the trial court's failure to define serious physical injury was error.[3] *See State v. Rodgers,* 641 S.W.2d 83, 84 (Mo.1982) (en banc). However, whether such error warrants reversal depends on its prejudicial effect. *See id.* at 84–85. Carter asserts that the failure to define serious physical injury in this instance was reversible error.[4] Thus, he claims that he was prejudiced by his attorney's failure to make sure that the instruction was given. Carter, however, fails to recognize that the standard for overturning a state court conviction on federal habeas review is more stringent than the standard for reversal on direct appeal.

In *Rodgers,* the court held: "It may well be the jury found something less than that required by statute in finding the defendant had inflicted serious physical injury.... While evidence in the record may support the verdict, it cannot be said that the jury would have so found had they been fully instructed." *Id.* at 85. Under Missouri law, an incomplete or incorrect jury instruction is prejudicial if the jury " 'may have been adversely influenced' " by the error. *Id.* (quoting *State v. Aitkens,* 352 Mo. 746, 179 S.W.2d 84, 94

---

**2.** The Eleventh Circuit has evaluated similar fair trial claims. *See Willis v. Kemp,* 838 F.2d 1510 (11th Cir.1988), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 596 (1989). In *Willis,* the court stated that no due process claim arises when the defendant's counsel, as a matter of reasonable trial strategy, decides not to object to prosecutorial misconduct. In such a situation, if the trial court sua sponte granted a mistrial, the defendant's right to proceed to verdict once jeopardy had attached would be violated. Further, the sua sponte issuance of a curative instruction could interfere with the defendant's trial strategy. *Id.* at 1519 & n. 19.

**3.** Since Carter's conviction, several changes have been made in the relevant instructions. Among them is the deletion of the requirement that serious physical injury be defined. *See*

*State v. Snyder,* 748 S.W.2d 781, 784–85 (Mo.Ct. App.1988). Our discussion of this issue involves the definitions and instructions required at the time of Carter's trial.

**4.** We question whether Carter is correct that the trial court's failure to define serious physical injury would have required reversal on direct appeal. *Compare Rodgers,* 641 S.W.2d at 84–85 (trial court's failure to define serious physical injury was reversible error) *with, e.g., State v. Pippenger,* 708 S.W.2d 256, 269–70 (Mo.Ct.App. 1986) (where victim testified that she was in fear of her life, trial court's failure to define serious physical injury was not plain error). Since we agree with the district court that Carter has failed to demonstrate prejudice resulting from the alleged ineffectiveness of his attorney, we need not resolve this issue.

(1944)). In contrast, to obtain habeas relief in federal court based on ineffective assistance of counsel, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984).

To prove a violation of his sixth amendment right to effective assistance of counsel, a petitioner must show both that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Id.* at 687, 104 S.Ct. at 2064. The Supreme Court indicated in *Strickland* that the performance component of the claim need not be addressed before a court reaches the prejudice component. In fact, when a petitioner fails to demonstrate sufficient prejudice from the alleged ineffectiveness, the court need not analyze the performance component. *Id.* at 697, 104 S.Ct. at 2069–70. Thus, we review only the district court's conclusion that Carter suffered no prejudice from the alleged ineffectiveness.

Carter argues that the jury's verdict might have been based on a finding that he threatened to inflict injury less severe than that required under the proper definition of serious physical injury. On the instructions given, the jury could have convicted Carter upon finding that he exerted physical force sufficient to overcome the victim's reasonable resistance, that he placed the victim in reasonable fear of death, or that he placed the victim in reasonable fear of serious physical injury. Only the third alternative creates any possible concern here.

The victim testified that Carter threatened to kill her and that he used a weapon.[5] The evidence amply supports a finding that the victim's reasonable resistance was overcome by physical force. Further, although no evidence of physical injury was presented, the evidence supports a finding

that Carter placed the victim in reasonable fear of physical injury that "creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." MAI–CR 2d § 33.01. *See State v. Pippenger*, 708 S.W.2d 256, 269–70 (Mo.Ct.App.1986) (where victim who was tied up and raped in her apartment testified that she feared for her life, no manifest injustice occurred from failure to define serious physical injury). We cannot say that a reasonable probability exists that the result would have been different had the jury been properly instructed.

### C. Procedural bar

Finally, Carter contends that the district court erroneously held that two of his grounds for relief were not subject to review in federal court because he failed to properly present them to the Missouri courts. The district court found that Carter failed to present to the state courts the following claims: 1) that he was denied due process and effective assistance of counsel because of a conflict of interest with his attorney and 2) that the victim's underpants were erroneously admitted into evidence. The court determined that the conflict of interest claim was not raised on the 27.26 appeal. And, the evidentiary issue was not raised either on direct appeal or on the 27.26 appeal. Our review of the record indicates support for these findings.

Because these claims were not properly presented to the state courts, they should be reviewed in federal court only if Carter can demonstrate cause for and prejudice arising from the procedural default. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Carter did not allege cause before the magistrate judge, and the magistrate judge found that no cause existed. However, Carter did allege ineffective assistance of counsel as cause in his exceptions to the report and

---

5. We disagree with Carter's contention that, because the hammer may have been merely a handle without a metal head, a reasonable jury could conclude only that the victim was in reasonable fear of serious physical injury, but not death.

recommendation.[6] The district court should have addressed Carter's contention that ineffective assistance of counsel excused his procedural default. In this case, however, the error does not require reversal. A review of the record reveals that the barred claims are without merit. Thus, we deny relief on that basis. *See Long v. Iowa*, 920 F.2d 4, 6 n. 2 (8th Cir.1990) (at least where relief is denied, appellate court may bypass procedural bar and address the much simpler issue of the merits of a claim).

■ First, Carter alleges that his attorney continued to represent him even though she had a conflict of interest. Thus, he claims that his rights to due process and effective assistance of counsel were violated. The conflict was allegedly created by Carter's filing, in April 1984, of a "1983 action" in federal court against his attorney alleging that she was not doing her job. 27.26 Transcript at 25–26. Based on the federal court action, Carter filed a motion in state court to have his attorney removed and a new one appointed. *Id.* at 27. The state court denied his motion, and he went to trial with that attorney. He now argues, as he did in his 27.26 motion, that a conflict of interest existed.

Both Carter and his trial attorney testified at the 27.26 evidentiary hearing. Carter's testimony reveals that he was able to work with his attorney both before and during his trial.[7] Carter's trial attorney testified that she knew of the lawsuit, that she discussed it with Carter, and that Carter did not want her to withdraw because that would have delayed his trial. *Id.* at 51. She further stated that she had no problems communicating with Carter and

---

6. The magistrate judge noted that an allegation of ineffective assistance of post-conviction counsel could not constitute cause. Subsequently, this court held that ineffective assistance of post-conviction counsel can constitute cause for a procedural default. *See Simmons v. Lockhart*, 915 F.2d 372, 376 (8th Cir.1990).

In his objections to the magistrate judge's report and recommendation, Carter asserted, in regard to the claims that were found to be procedurally barred:

*Exception No. 1:* ... Petitioner would argue that he presented the claims in his Rule 27.26 pleadings in the state courts when his court appointed Public Defender would not present them in his direct appeal brief. It is a recognized fact that court appointed Public Defender on direct appeal will not challenge the competency and effectiveness of another Public Defender as trial counsel. It is obvious one Public Defender will not challenge the effectiveness of another fellow Public Defender regardless of how true such a claim might be due to the conflict of interests involved. The U.S. Magistrate fails to take cognizance of such an obvious conflict of interests and would thus approve such a procedure.

*Exception No. 2:* Petitioner persistently sought the assistance of his court appointed Public Defender on his direct appeal in pursuing his claim of ineffective assistance of the Public Defender trial attorney. These requests and admonitions went unheeded due to the obvious conflict of interests involved. The U.S. Magistrate's findings ignore such a conflict of interests and the resultant ineffectiveness of both trial counsel and appeal counsel on direct appeal and on the presentations made by counsel on Petitioner's Rule 27.26 claims.

Designated Record at 34–35.

Carter's objections do not specifically refer to the ineffectiveness of post-conviction appellate counsel. Liberally construing his pro se allegations, we believe he raised the issue. The district court adopted the report and recommendation without comment. Thus, the district court apparently did not evaluate post-conviction counsel's performance.

7. During his 27.26 hearing, Carter testified:

Q And you said your disagreement with her was she wasn't doing her job because she didn't have a police report, isn't that right?
A Correct.
Q But at the time you filed the action she had it?
A To my knowledge.
Q And during the course of your incarceration until your trial you were able to participate with her, is that correct?
A Correct.
Q Were you able to communicate with her?
A Correct.
Q And you were able to ask questions or communicate with her while she was asking questions about things you thought should be brought up, isn't that right?
A Correct.
 . . . .
Q And you had talked to [your attorney] before your trial on numerous occasions?
A Yes.
Q And you discussed the relevant parts of your case and the various things that were going to go on, isn't that correct?
A Right.

27.26 Transcript at 35–37.

**1300**

that he complimented her performance after he was convicted on only one of the four charges. *Id.* at 51–53. There is no indication in the record that Carter was unable to communicate with or assist his attorney or that she did anything that was contrary to his wishes.

The 27.26 trial court found that the witnesses in support of the state's position were the only credible witnesses and that no conflict existed between Carter and his attorney. *See* 27.26 Legal File on Appeal at 23–24. Further, the state court found that Carter and his attorney "cooperated closely in defending the case." *Id.* at 23. While the state court's factual findings are binding on this court in a habeas proceeding, *see* 28 U.S.C. § 2254(d), whether a conflict exists is a mixed question of law and fact which we review de novo. *See Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980) (whether lawyers engaged in multiple representation is mixed question of law and fact); *see also Oliver v. Wainwright,* 782 F.2d 1521, 1524 (11th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986) (whether actual conflict of interest exists is mixed question of law and fact).

We recognize that a pending lawsuit between a defendant and his attorney may give rise to a conflict of interest requiring appointment of new counsel. *See Smith v. Lockhart,* 923 F.2d 1314 (8th Cir.1991). However, a defendant who files a lawsuit against his attorney does not necessarily create such a conflict. *See id.* at 1321 n. 11. We accept the state court's credibility determinations. The testimony at the 27.26 hearing indicates that Carter and his attorney worked together closely and effectively in his defense. Carter's testimony indicates that he was able to work with his attorney and that she did everything that he asked her to do. After reviewing the record, we find no support, except the filing of the lawsuit, for Carter's claim. Thus, we find no merit to Carter's contention that an irreconcilable conflict existed.

■ Carter's final contention is that the trial court received the victim's underpants, which contained traces of semen, in evidence without the required showing of chain of custody. We think that sufficient foundation was established for receipt of the undergarment. Even if not, as earlier noted, questions concerning the admissibility of evidence are generally not subject to review in habeas actions. The admission of this evidence did not deprive Carter of a fair trial.

Carter cannot establish that he was prejudiced by the alleged ineffectiveness of his post-conviction counsel. There is no reasonable probability that the result of the proceedings would have been different had these issues been presented in state court as he claims they should have been.

The district court's order denying Carter's petition for a writ of habeas corpus is affirmed.