## MARK BRYAN CLARK, Appellant, v. THE STATE OF NEVADA, Respondent.

### No. 21780

May 13, 1992                                        831 P.2d 1374

[Rehearing denied August 10, 1992]

*Muriel R. Skelly,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Dorothy Nash Holmes,* District Attorney; and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Mark Clark was found guilty of first-degree murder with the use of a deadly weapon in connection with the death of

Allan Kilen, his former associate. Clark received one sentence of life in prison with the possibility of parole for the murder, and a second consecutive sentence of life with the possibility of parole as a deadly weapon enhancement. Clark's direct appeal to this court was dismissed. (Case No. 17596.) Clark then filed a petition for post-conviction relief, alleging that his trial counsel's ineffectiveness deprived him of his Sixth Amendment right to counsel. After a hearing on the petition, relief was denied, thus prompting the instant appeal. We now reverse.

Clark alleges that the derelictions of his trial counsel, David McElhinney, deprived him of his constitutionally guaranteed right to the effective assistance of counsel. We have determined that it is unnecessary to examine McElhinney's legal performance during the trial because of an egregious conflict of interest inherent in McElhinney's representation of Clark. The conflict of interest under which trial counsel labored is dispositive of this appeal.

## Facts

Clark engaged McElhinney to defend him in his first-degree murder trial for $10,000.00. It was agreed that this fee would come from the proceeds of a personal injury settlement handled by McElhinney's firm on behalf of Clark. However, when the settlement proceeds were disbursed, a $4,785.05 medical lien on Clark's personal injury recovery was overlooked. The clinic holding the lien filed a complaint against Clark, his wife, and McElhinney's firm. McElhinney filed a cross-claim against Clark and his wife, and obtained a default judgment for $5,600.00 against Clark while Clark was in jail awaiting sentencing on his first-degree murder conviction. McElhinney recalls that his firm eventually had to satisfy the clinic's claim.

The district court conducted a hearing to evaluate Clark's ineffective assistance of counsel claim. During the hearing, McElhinney attempted to defend his actions, claiming that he had discussed the civil suit with Clark (in prison), explained that he was merely following the orders of a senior partner in filing the civil action, and assured Clark that the pursuit of the civil suit would not affect his representation. McElhinney indicated that Clark seemed satisfied with this explanation. McElhinney could not recall with certainty whether he had discussed the civil suit with Clark before or after filing it. The district court determined that the actions of McElhinney and his firm created a technical conflict of interest, but denied relief because it found no resultant prejudice to Clark.

## Discussion

The standard governing ineffective assistance of counsel claims

326

was enunciated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), and adopted by this court in Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984), *cert. denied,* 471 U.S. 1004 (1985). Under this two-prong test, a defendant who challenges the adequacy of his counsel's representation must show, first, that his counsel's performance was deficient, and second, that the defendant was prejudiced by this deficiency. The district court based its denial of relief upon Clark's failure to establish the second element—prejudice.

However, in certain limited instances, a defendant is relieved of the responsibility of establishing the prejudicial effect of his counsel's actions. An actual conflict of interest which adversely affects a lawyer's performance will result in a presumption of prejudice to the defendant. *Strickland;* Cuyler v. Sullivan, 446 U.S. 335 (1980); Mannon v. State, 98 Nev. 224, 226, 645 P.2d 433, 434 (1982). This exception is based, in part, on the difficulty in measuring the effect of representation tainted by conflicting interests. *Strickland* at 692. We conclude that an actual conflict of interest may well have had an adverse effect on McElhinney's performance, and therefore, the district court erred in requiring Clark to show that he was prejudiced by McElhinney's conflicting loyalties.

Every defendant has a constitutional right to the assistance of counsel unhindered by conflicting interests. Holloway v. Arkansas, 435 U.S. 475 (1978); Harvey v. State, 96 Nev. 850, 619 P.2d 1214 (1980). "Conflict of interest and divided loyalty situations can take many forms, and whether an actual conflict exists must be evaluated on the specific facts of each case. In general, a conflict exists when an attorney is placed in a situation conducive to divided loyalties." Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991).[1] We have no doubt that "a situation conducive to divided loyalties" existed here.[2] Moreover, it is disturbing to this court that an attorney would pursue a civil action against his client, whom he is representing in a first-degree murder trial, and obtain a default judgment against him while the incarcerated client is awaiting sentencing on the murder conviction. Such conduct strikes at the very core of the attorney-client relationship.

---

[1] *See also* SCR 157(2).

[2] *Cf.* State v. Wiley, 441 N.W.2d 629 (Neb. 1989) (the fact that lawyer had an unsatisfied money judgment against client while representing him in a criminal matter did not create an actual conflict).

McElhinney may earnestly have believed that pursuing the civil action against Clark would not affect his representation. However, the appearance of impropriety and potential for adverse consequences were so great here, that the conflict could not be condoned. The case against Clark was highly circumstantial, and involved substantial medical evidence. McElhinney and his firm must have realized that if they were required to satisfy the clinic's claim from the settlement proceeds, only about $5,000.00 would remain to compensate the firm for handling a first-degree murder defense. Knowing this, McElhinney may have been conservative in his efforts to interview potential witnesses or hire necessary experts. For example, McElhinney did not interview Dr. Roger Ritzlin, the State's witness who testified about the initial autopsy results from Kilen's body. Moreover, under the circumstances of this case, some attorneys might conclude that there is less incentive to interpose every available defense, as an incarcerated client would be less apt to vigorously oppose an entry of default and subsequent enforcement of the civil judgment. Accordingly, we determine that there is a significant possibility that McElhinney's performance was adversely affected by this conflict, or, equally compelling, that the appearance of impropriety created by the conflict was too great to be judicially excused. Under the fact-specific circumstances of this case we conclude that Clark was relieved of the obligation to show prejudice.

In Jewell v. Maynard, 383 S.E.2d 536 (W.Va. 1989), the court pointed out that "economic pressure must adversely affect the manner in which at least some cases are conducted" by criminal defense lawyers who receive only a nominal sum for their services. Additionally, the Florida Court of Appeals observed:

> [I]t would be foolish to ignore the very real possibility that a lawyer may not be capable of properly balancing the obligation to expend the proper amount of time in an appointed criminal matter where the fees involved are nominal, with his personal concerns to earn a decent living by devoting his time to matters wherein he will be reasonably compensated.

Okeechobee County v. Jennings, 473 So.2d 1314, 1318 (Fla. Dist.Ct.App. 1985). Although the above cases dealt with appointed counsel who were limited to statutory fees for recovery, the same reasoning is applicable to underpaid private defense counsel.

Because we have conclusively presumed prejudice to Clark's defense under the specific facts of this case, we reverse the decision of the district court and vacate Clark's conviction. In so ruling, we do not relax the rule announced in *Cuyler* which would ordinarily require a defendant to show the existence of a conflict

of interest which actually affected the adequacy of his counsel's performance. In addition, because this type of conflict and behavior cannot be countenanced, we order David McElhinney, and his former firm, who pursued the civil action against Clark, to deposit with the district court the sum of $5,000.00 to be used on behalf of Clark to defray the costs of obtaining new counsel on the retrial of this case.[3]

---

[3]The State did not indicate that a reversal would critically prejudice its ability to prosecute Clark in a new trial.