Filed 12/16/15 Abedi v. Sheikhpour CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HEDAYAT ABEDI et al.,<br>    Plaintiffs, Cross-defendants and<br>Respondents; | G050361 |
| v. | (Super. Ct. No. 30-2009-00331327) |
| FRYDOUN SHEIKHPOUR,<br>    Defendant, Cross-complainant and<br>Appellant; | |
| FRY'S DISNEY SHELL et al.<br>    Cross-defendants and Respondents; | |
| SAMUEL T. REES,<br>    Objector and Appellant. | |
| HEDAYAT ABEDI,<br>    Plaintiff, Cross-defendant and<br>Respondent, | G050362 |
| v. | (Super Ct. No. 30-2011-00448755) |
| FRYDOUN SHEIKHPOUR,<br>    Defendant, Cross-complainant and<br>Appellant; | O P I N I O N |
| SAEED HEJRAN et al.,<br>    Defendants, Cross-defendants and<br>Respondents; | |
| SAMUEL T. REES,<br>    Objector and Appellant. | |

Appeal from two orders of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Appeal from one order dismissed; other order affirmed.

Samuel T. Rees, in pro. per., for Objector and Appellant.

Frydoun Sheikhpour, in pro. per., for Defendant, Cross-complainant and Appellant.

Siobhan M. Bishop, for Plaintiffs, Cross-defendants and Respondents.

Jacobs & Dodds, Paul N. Jacobs and Debra A. Dodds for Cross-defendant and Respondent Fry's Disney Shell.

\*          \*          \*

## I.  INTRODUCTION

When an attorney sued his client for fees while still representing him, the Supreme Court of Nevada called the conduct "egregious."  (*Clark v. State* (1992) 108 Nev. 324, 325.)  And that was a case where the fees might have been incurred in an *unrelated* matter.  How much more egregious is it when the suit is for accumulated fees in the very case in which the attorney is *still* representing the client?

That is this case.  But here's the twist:  The client has expressly, and in writing, consented to the continued representation by an attorney in the law firm that sued him.  The client is also willing to testify he got independent counsel before making the waiver.  Does that mean the trial judge's order disqualifying the attorney was an abuse of discretion?

We think not.  California law is quite explicit in specifically giving a trial judge broad discretion, in the "furtherance of justice," to control the conduct of attorneys in her courtroom.  (See Code Civ. Proc., § 128, subd. (a)(5);[1] see also *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145

---

[1]  All undesignated statutory references to section 128 are to the Code of Civil Procedure.  The complete text of subdivision (a)(5) of section 128 is:  "To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto."

(*SpeeDee Oil*) [noting trial court's authority to disqualify an attorney derives from section 128, subdivision (a)(5)].) As we explain below, when lawyers sue a *current* client, the nature of the conflict is unwaivable. And since the conflict is unwaivable, the trial judge manifestly acted within her discretion here.

## II. FACTS

This litigation began in December 2009, when Joseph Rajabi and Ali Sadiri sued Frydoun Sheikhpour for fraud. Essentially, they claimed each of them had invested substantial sums (Rajabi, $400,000, Sadiri, $215,000) to become part owners, along with Sheikhpour, in a gas station near Disneyland.[2]

The complaint alleged that back in 2007 Shiekhpour had a gas station empire of 12 stations, and sought out investors to expand his empire to include a new, 13th, station near Disneyland, complete with a sandwich franchise, a taco location, a lotto station, and a Western Union station. The two investors allege that Sheikhpour took their money and used it either for his own personal investments or for his other stations. Causes of action included a claim for intentional fraud.

By April 2010, Sheikhpour was being represented by a Beverly Hills attorney. But in August 2010, the Beverly Hills attorney was substituted out, and the law firm of Bleau Fox (Thomas P. Bleau and Martin R. Fox) was substituted in as Sheikhpour's counsel. In turn, Bleau Fox directed Samuel T. Rees, officially "of

---

[2]    Appellants Samuel Rees and Frydoun Sheikhpour's Appellant's appendix does not provide a sufficient picture of the litigation for us to fully evaluate the trial court's disqualification order. For example, it *begins* with a first amended cross-complaint filed by Thomas Bleau and Rees of the Bleau Fox law firm on behalf of Sheikhpour, a sequencing which obscures the fact that Sheikhpour is being sued by people who invested money with him for fraud. The case properly begins with Rajabi and Sadiri's original complaint. On our own motion, we have taken judicial notice of the following documents from the trial court file: (1) the original complaint filed December 23, 2009, on behalf of Rajabi and Adiri; (2) a case management statement filed April 10, 2010, by Shiekhpour's erstwhile Beverly Hills attorney; and (3) the trial court's statement of decision filed May 1, 2015. (See *In re Marriage of Wilson & Bodine* (2012) 207 Cal.App.4th 768, 770, fn. 1 ["On our own motion, we took judicial notice of the entire trial court file in the paternity case and the marital dissolution case, and viewed them electronically, to have a more complete picture of the status of the case. (Evid. Code, § 452, subd. (d).)"]; *Bro v. Glaser* (1994) 22 Cal.App.4th 1398, 1405 ["Otherwise, there was some procedural confusion arising by reason of plaintiffs' notice of appeal which showed that plaintiffs did not undertake to appeal from the actual judgment by which the litigation, as to plaintiffs personally, was terminated in the trial court. As a result, we called up the entire trial court file and, on our own motion, elected to take judicial notice thereof. (Evid. Code, § 459.)"].)

counsel" to the firm, to work on the case. The case got more complicated as a former Sheikhpour partner, Hedayat Abedi,[3] filed his own action against Sheikhpour.[4]

In October 2012, a "fee dispute" – and the record is not more clear than that – arose between Bleau Fox and Sheikhpour. Most or all of the disputed fees, as tacitly acknowledged in the opening brief, were for work done by Rees. As a result, in November Sheikhpour substituted himself in as his own lawyer, and Rees ceased to represent Sheikhpour. In December, Bleau Fox sued Sheikhpour for its unpaid fees in Los Angeles Superior Court. About nine months later, in September 2013, the firm obtained a judgment for about $300,000. Though the record is not explicit, it appears it was a default judgment. Also in September 2013, the firm of Bleau Fox sought to intervene on its own behalf in the case before us to protect its fee claim. In that motion to intervene, Rees, no longer representing Sheikhpour, now represented Bleau Fox. The intervention motion was denied, and Sheikhpour continued on in propria persona.

However, in February 2014, Bleau Fox again sued Sheikhpour. This time the suit was for Sheikhpour's fraudulently conveying his house to his wife. Apparently Bleau Fox's theory was that the transfer was intended to hinder Bleau Fox's ability to collect the judgment it had just obtained against Sheikhpour.

Two months later, in April 2014, Rees substituted into the combined Rajabi-Abedi actions, again as Sheikhpour's attorney, with Sheikhpour waiving any conflict arising out of Rees' relationship to the Bleau Fox firm. Upon his substitution (back) into the case, the trial judge, on her own motion, set an order to show cause as to

---

3    Rajabi's original complaint alleged that Abedi in fact had approached Rajabi and Sadiri about investing in the gas station.

4    During the pendency of this appeal Abedi died and the trial court dismissed with prejudice all disputes between him and Sheikhpour. Appeal number G050362 is substantively identical to appeal number G050361, but it only relates to Abedi. Accordingly, we grant the motion of Rees and Shiekhpour to sever G050362 from G050361, and dismiss G050362. However, given the substantive similarity in the two appeals and the fact Rajabi, Sadiri *and* Abedi all joined together to file one respondent's brief on appeal, we deny their additional request to strike Abedi's respondent's brief, as if we could sever that portion only dealing with him from the portion dealing with Rajabi and Sadiri.

4

why Rees, given his relationship to Bleau Fox, shouldn't be disqualified. The Rees-Sheikhpour opposition papers contained a clear statement that Sheikhpour was willing to waive any conflict of interest between him and Rees. The papers were predicated on Rees' being independent of Bleau Fox, despite Rees' "of counsel" status. They did *not* contain a statement that Sheikhpour had sought out and obtained wholly independent counsel on the matter of the advisability of making that waiver. However, at the hearing on the disqualification motion in May, Rees made it clear that Sheikhpour was willing to take the stand and testify he *did* have such independent counsel.

The trial judge refused the offer, and disqualified Rees. Now both he and Sheikhpour, each ostensibly in propria persona, have jointly filed this appeal.[5] While Sheikhpour filed for bankruptcy a few months after the disqualification motion, Raja and Sadiri soon obtained relief from stay, allowing them to continue to prosecute their action against Sheikhpour in state court.[6]

## III.  DISCUSSION

### A. *The "Of Counsel" Issue*

Preliminarily, we dispense with any notion that Rees' "of counsel" relationship with Bleau Fox represents a sufficiently existential separation between Rees and Bleau Fox to make him a functionally separate lawyer from Bleau Fox. Rees' of counsel status most certainly does not obviate his identification with Bleau Fox. *Sands & Associates v. Juknavorian* (2012) 209 Cal.App.4th 1269 (*Sands*) held it was irrelevant that lawyers who were "Of Counsel" to a law firm were the attorneys for the firm in its attempt to obtain attorney fees as a prevailing party in litigation against one of the law

---

[5]    Both Rees' and Sheikhpour's names appear on the opening and reply brief. Since a major subtheme of the appeal in this case is Sheikhpour's lack of legal training and the fact English is not his native language (also pointed out in the intervention motion, for example), we may safely assume Rees wrote the brief entirely himself.

[6]    Before proceeding with this appeal, we requested from Rees and Sheikhpour an update on the status of the bankruptcy case. We grant their motion for judicial notice of various post-appeal documents filed August 24, 2015, including the bankruptcy court's relief from stay.

firm's clients (another "fee dispute").  The *Sands* court left no doubt about the connection between a lawyer who is "of counsel" to a firm and the firm itself:  "[W]e conclude that, in recovering the unpaid attorney fees from Juknavorian, Of Counsel were pursuing the interests of the Sands firm and their own personal interests; the firm and Of Counsel had the same interests."  (*Id*. at pp. 1273 & 1296.)

The "Of Counsel" arrangement could not circumvent the rule of *Trope v. Katz* (1995) 11 Cal.4th 274, which held that in order to collect fees as a prevailing party, a party must actually *incur* those fees; the party can't get fees for its own legal work. (See *Sands, supra*, 209 Cal.App.4th at p. 1281.)  The *Sands* court reiterated the fundamental identification between "of counsel" and the law firm in even plainer terms: "[B]ecause the relationship between a law firm and 'of counsel' is close, personal, regular, and continuous, we conclude that a law firm and 'of counsel' constitute *a single, de facto firm,* and thus a law firm cannot recover attorney fees under a prevailing party clause when, as a successful litigant, it is represented by "of counsel."  (*Sands, supra*, 209 Cal.App.4th at p. 1273, italics added; accord, *SpeeDee Oil, supra*, 20 Cal.4th at p. 1153.)

B.  *An Unwaivable Conflict*

Therefore, for purposes of evaluating the disqualification motion, we must conclude Rees was effectively a member of Bleau Fox.  That presents a situation where, in effect, a law firm has sued its own client for accumulated fees in the very case in which it continues to try to represent the client.

Cases involving lawyers who have sued *current* clients are reassuringly sparse.  (See *In re Simon* (N.J. 2011) 206 N.J. 306, 312 [noting "dearth" of case law on

6

the issue].) The parties have cited none.[7] Our own research has uncovered one, maybe two, depending on how the second case is understood. Not surprisingly, the one definite case is a disciplinary matter against the suing attorney. While neither of the two cases involved a written waiver from the client, they are worth reviewing to demonstrate the level of judicial revulsion at the idea of lawyers suing current clients.

In *In re Simon*, an attorney represented a client in a criminal case, who was referred to the attorney by the client's brother. The attorney thought the *brother* was good for the fees, which, after the client was indicted, quickly reached $50,000. (*Id*. at p. 308.) But the brother could only raise $10,000 from a refinancing of his home and even after he sold his home and paid another $10,000 he was still $50,000 short on a bill that now amounted to $70,000. (*Ibid.*) When the brother told the attorney he was tapped out, the attorney decided his client should "'take a plea.'" (*Ibid*.) He also wrote the brother to say he was going to seek to be relieved of counsel if suitable payment arrangements were not forthcoming, and was also going to sue for it. The attorney was true to his word – he sought to be relieved of counsel – but the trial judge denied the motion. The attorney then appealed the denial of the motion to be relieved, and also filed suit against his client for the balance of his fees – now up to $75,000 – against the brother, the client, and the client's mother. Shades of the present case, the client's own family transferred their home to another family member (presumably to avoid a judgment for the attorney fees), but when the judge learned of the suit for fees, he changed his prior order and relieved the attorney. (*Id.* at pp. 309-310.) As an added bonus, the judge referred the whole matter to

---

7        For purposes of the case at bar, we don't include *Klemm v. Superior Court* (1977) 75 Cal.App.3d 893 (*Klemm*) in the group. *Klemm* involved a single attorney, a friend of the husband's, who was donating her services to represent both the husband and wife getting an uncontested divorce. The court held that since the conflict was, under the circumstances, only "potential," it was also waivable: "However, if the conflict is merely potential, there being no existing dispute or contest between the parties represented as to any point in litigation, then with full disclosure to and informed consent of both clients there may be dual representation at a hearing or trial. [Citations.] [¶] In our view the case at bench clearly falls within the latter category. The conflict of interest was strictly potential and not present." (*Id*. at p. 899.)

Nevertheless, *Klemm* also had something to say about the nature of unwaivable conflicts which we will quote below.

the state's attorney ethics authority. The attorney obtained an arbitration award for $55,000 against the brother and the client's mother – which apparently was never paid – and the matter of the suit for fees soon reached an ethics committee panel, which concluded he had violated the state's rules against current conflicts of interest rule by suing a "present client." It recommended a six-month suspension (a review board reduced his discipline to a reprimand). (*Id*. at pp. 312-313.)

The matter was taken to the state Supreme Court. It held the attorney had clearly placed himself in an adversarial relationship with his client, thus jeopardizing his ability to represent that client with the "'utmost zeal'" and dividing his loyalty. (*In re Simon, supra*, 206 N.J. at p. 318.) His conduct could not "be tolerated." (*Id.* at p. 321.) Nor could the suit be excused as a mere procedural device to get out of the case by "creating a conflict." (*Id.* at p. 319.) So the high court affirmed the reprimand recommendation. (*Id*. at p. 321.)

Interestingly enough, one justice dissented, noting the "Hobson's choice" faced by attorneys: "[a]lready in a financial hole, they are forced to hopelessly continue to dig themselves into a yet deeper and potentially bottomless financial abyss." (*In re Simon, supra*, 206 N.J. at p. 321-323, conc. & dis. opn. of Rivera-Soto.) The dissenting justice thought the attorney still guilty of an "infraction" of the state's rules of professional conduct, but he felt that infraction was not worthy of formal discipline. (*Id*. at p. 321.)

The consequences of suing a current client were somewhat greater than a mere reprimand in *Clark v. State, supra*, 108 Nev. 324. There, a client engaged an attorney to defend him in a murder case, agreeing the fees would come out of a personal injury settlement coming the client's way. But a medical lien on that settlement was overlooked. When the clinic sued to enforce its lien, the attorney cross-complained against the client and his wife to collect his fees, and obtained a default judgment against them. The opinion is unclear as to whether the judgment was for accumulated fees in the

criminal defense or for work in the personal injury case.[8]  In any event it was for fees owed to the attorney or his firm.  A default judgment was obtained after the client had been convicted.  He was sentenced to life in prison with possibility of parole.

In post-conviction proceedings the client alleged his attorney's suit against him rendered the attorney's representation ineffective, and the Nevada Supreme Court agreed.  (*Clark v. State, supra,* 108 Nev. at pp. 325.)  The high court found the notion of suing a current client for fees to amount to "an egregious conflict of interest."  (*Id.* at p. 325.)  In fact it went so far as to hold "the appearance of impropriety and potential for adverse consequences were so great here" that prejudice was to be *conclusively* presumed requiring the conviction itself to be vacated.  (*Id*. at pp. 327-328.)[9]  As an added fillip, instead of referring the matter to disciplinary authorities, the high court ordered the attorney and his former law firm to pay $50,000 to the trial court to be used to defray the expenses of the client on retrial.  (*Id*. at p. 328.)

We need not belabor the potential for raw conflict that inheres in the case before us.  Trying to represent someone at the same time you're suing them seems to present obstacles so obvious and numerous as to defy full delineation.  We could go on for paragraphs if the existence of the conflict were the issue.  But this case is different in

---

[8]    The *Clark* court limited its statement of facts to one paragraph.  "Clark engaged McElhinney to defend him in his first-degree murder trial for $10,000.00.  It was agreed that this fee would come from the proceeds of a personal injury settlement handled by McElhinney's firm on behalf of Clark.  However, when the settlement proceeds were disbursed, a $4,785.05 medical lien on Clark's personal injury recovery was overlooked.  The clinic holding the lien filed a complaint against Clark, his wife, and McElhinney's firm.  McElhinney filed a cross-claim against Clark and his wife, and obtained a default judgment for $5,600.00 against Clark while Clark was in jail awaiting sentencing on his first-degree murder conviction.  McElhinney recalls that his firm eventually had to satisfy the clinic's claim."  (*Clark v. State, supra*, 108 Nev. at p. 325.)

[9]    Though we recount *Clark's* rationale that invoked the appearance of impropriety, we do not ground our decision today in any way on that thought.

9

that Sheikhpour is willing to waive the conflict, thus it distills to the issue of whether the obvious and, under *Clark v. State*, "egregious" conflict, is waivable.[10]

We conclude it is not. There is a per se rule against waivability when it comes to actual, as distinct from merely potential, conflicts. The underlying premise is that the client can never *really* waive the conflict, because the client will never be fully informed about its ramifications. As the court said in *Klemm*: "As a matter of law a purported consent to dual representation of litigants with adverse interests at a contested hearing would be neither intelligent nor informed. Such representation would be per se inconsistent with the adversary position of an attorney in litigation, and common sense dictates that it would be unthinkable to permit an attorney to assume a position at a trial or hearing where he could not advocate the interests of one client without adversely injuring those of the other." (*Klemm, supra*, 75 Cal.App.3d at p. 898.) The advice of outside counsel cannot be relied upon to cure the problem because outside counsel cannot know the case as well as the attorney who has nurtured it for years and cannot be relied upon to possess the clairvoyance necessary to anticipate the twists and turns it will take in the future.

Here, Bleau Fox was – literally – *Rees'* client when Bleau Fox sought to intervene in this action, then turned around and purported to resume representing Sheikhpour. There can be no doubt Bleau Fox and Sheikhpour have *actual* adverse interests vis-à-vis each other: Bleau Fox wants to collect on its judgment (which, to

---

10      We decline to sidestep the legal issue of waivability by focusing on Rees' less-than-prescient paperwork on Sheikhpour's behalf. In the opposition, there is no *express* statement that Sheikhpour had independent counsel before entering into the waiver. Not having independent counsel before a client enters into a transaction with a lawyer can, of course, have some dramatic and adverse consequences. (See *Passante v. McWilliam* (1997) 53 Cal.App.4th 1240, 1248 [lawyer's failure to advise start-up company of the need for independent counsel prior to receiving stock in company for lawyer's arranging of financing resulted in forfeiture of the stock in what became a billion-dollar enterprise].) At the hearing, Rees and Sheikhpour tried to finesse the omission by offering to have Sheikhpour testify he did indeed have independent counsel before entering into the waiver. Rather than decide this case on the collateral issue of whether it was an abuse of discretion for the trial judge not to allow Rees and Sheikhpour to cure their paperwork by an offer of proof at the hearing, we have decided to meet the issue head on, and credit the opening brief's assertion that Sheikhpour not only waives the conflict with Bleau-Fox Rees, but also had independent counsel prior to the decision to waive the conflict.

repeat, is based mostly on Rees' own work), and Sheikhpour may be assumed to want to keep as many assets as he possibly can so as to be able to one day settle with Rajabi and Sadiri, and maybe Bleau Fox as well. In that regard, it must be noted that Rajabi and Sadiri's claims against Sheikhpour are based on fraud, and thus *not* dischargeable in bankruptcy. By contrast Bleau Fox's claims are based in contract and are dischargeable.

So we also consider the asymmetry of the respective claims of Bleau Fox on the one hand and Rajabi and Sadiri on the other. Normally, attorneys do not sue clients for fees until after the case is over, and only then if they are extremely sure of the quality of their work or extremely foolhardy. That puts attorneys at a natural disadvantage vis-à-vis competing creditors of their client in cases where the client faces the likelihood of losing big to the creditors and doesn't have the assets to pay both the attorneys and the creditors. Assuming an unwillingness on the client's part to keep the attorneys' bills absolutely current, the attorneys face an end game in which they are likely to have to write off all or a portion of what they think the client owes them. Justice Rivera-Soto thus had a valid point in his dissent in *In re Simon*: Attorneys can often find themselves digging into a financial hole with little hope of emerging with their fees paid.

Moreover, it is also likely that attorneys in a situation like Bleau Fox (or the attorney in *In re Simon*) have insider information about the client's assets. And so the temptation becomes great to launch a preemptive strike in the form of a suit against the client for accumulated unpaid fees, so as to grab as many of the client's assets as might remain before the claimants can get hold of them – particularly if the client is unable to pay for subsequent counsel to stave off that lawsuit. It appears that Bleau Fox succumbed to that temptation, including striking before Sheikhpour could find alternative counsel to defend the firm's fee claim against him. Beyond that, there is an inference that in suing Sheikhpour, Bleau Fox hoped to levy on assets based on a claim that bankruptcy law would make dischargeable before Rajabi and Sadiri could levy on them based on claims that are not dischargeable. The upshot is that Bleau Fox injected their own,

11

private and collateral, claims into the normal administration of justice in an effort to obtain an inequitable bankruptcy "preference" by which they are favored over other creditors.[11]

The attempt really is, as *Klemm* said, "unthinkable." The trial judge's decision to disqualify Rees was thus reasonable even if Sheikhpour had had independent counsel prior to waiving the conflict with Rees.

We hasten to add we ground our decision strictly in the statute that gives courts inherent power to control the officers of the court (i.e., attorneys) who appear in their courtrooms. Section 128, subdivision (a)(5) gives courts authority to control the officers who appear before them in the "furtherance of justice" as regards "every matter pertaining thereto." Disqualifying attorneys who purport to represent clients they are currently suing for fees in the very matter before the courts in order to further justice certainly comes within the ambit of that statutory authority.

## IV. CONCLUSION

The appeal in G050362 is dismissed as moot. The disqualification order that is the subject of the appeal in G050361 is affirmed. In light of that affirmance, we need not discuss Rees and Sheikhpour's ancillary request that we vacate all the work of the trial court after the disqualification order.

Respondents shall recover their costs on appeal. One final word: We affirm the trial court's decision based on section 128, subdivision (a)(5), and *not* pursuant to any violation of the Rules of Professional Responsibility, e.g., rule 3-310 [basic rule against attorney conflicts] or the ethics opinions of any local bar association. In light of Sheikhpour's waiver and offer to testify he had independent counsel, our decision does not address the issue of whether Bleau Fox or Rees violated any *ethical* rules applying to

---

[11] The trial court's statement of decision filed May 1, 2015, recounted that Sheikpour "acted with fraud." While (of course) taking judicial notice of that document does not establish that, in fact, Sheikhpour *did* act with fraud (that's a classic mistake when taking judicial notice) it certainly does show the reasonableness of the inference that the Bleau Fox firm knew of Sheikhpour's potential exposure to nondischargeable claims.

12

the legal profession.  Any violation of ethical rules is for another day and another tribunal.  It is enough to say the trial judge acted reasonably pursuant to her statutory authority to control the attorneys in her court.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.