133 Nev., Advance Opinion 105

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

BRANDON MONTANE JEFFERSON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 70732

FILED

DEC 28 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Brandon Montane Jefferson appeals from a district court order denying his postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Kerry Louise Earley, Judge.

*Affirmed.*

Nguyen & Lay and Matthew Lay, Las Vegas,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Krista D. Barrie, Chief Deputy District Attorney, Clark County,
for Respondent.

---

BEFORE SILVER, C.J., TAO and GIBBONS, JJ.

*OPINION*

By the Court, TAO, J.:

Shortly before his criminal trial was originally scheduled to begin, appellant Brandon Jefferson filed a complaint against his court-appointed defense attorney with the State Bar of Nevada. In this appeal

17-902728

from the denial of a postconviction petition for a writ of habeas corpus, he contends that the filing of the bar complaint created a per se actual conflict of interest that rendered trial counsel constitutionally ineffective under the Sixth Amendment which, if true, would give rise to a presumption that the conflict prejudiced the outcome of his trial. We disagree and affirm the denial of his postconviction petition.

## FACTUAL AND PROCEDURAL HISTORY

Jefferson was convicted by a jury of three counts (out of six counts originally charged) of sexual assault of a minor under the age fourteen and one (out of five) counts of lewdness with a minor under the age of fourteen.

Days before his original trial date, Jefferson sent a letter to the State Bar of Nevada alleging that he was "having a bit of an issue with" one of the two deputy public defenders assigned to represent him. The letter explained that counsel "'lightly' verbally abuses" Jefferson, "ignores [his] outlook," and once purportedly stated that "people like you belong in hell not prison." The Bar forwarded a copy of the letter to counsel with a request that he provide a written response.

The day after sending his letter to the Bar, Jefferson also filed a motion with the district court requesting that the court dismiss his current counsel and appoint alternate counsel. The written motion recited a laundry list of things that counsel allegedly refused to do to prepare for trial: communicate with him meaningfully or at length, thoroughly investigate a potential alibi defense, tell him the truth about the status of the case, give him copies of discovery obtained from the State, seek an acceptable plea bargain negotiation on his behalf, file enough motions on his behalf, and generally work hard enough. The motion did not reference the bar complaint that had been sent the previous day. During a hearing

on his motion to dismiss counsel, Jefferson verbally narrowed his litany of grievances down to complaining that counsel had not given him all of the discovery procured from the State, and had failed to investigate a potential alibi defense based upon his having been at work during some of the charged crimes. Neither the district court nor Jefferson's counsel appeared aware that a bar complaint had been filed the previous day, and Jefferson did not mention it during the hearing. The district court denied his motion.

Jefferson's trial was subsequently postponed for unrelated reasons and eventually began about a year after Jefferson sent his letter to the Bar. During the lengthy delay, Jefferson did not again request that counsel be replaced, and there is no indication in the record that his bar complaint was referenced ever again either before or during trial.

Following his conviction, Jefferson filed a direct appeal to the Nevada Supreme Court. Among the issues raised was that the district court erred in denying his motion to dismiss counsel, but Jefferson did not mention the bar complaint as a reason why the district court's decision was erroneous. The court affirmed the judgment of conviction, concluding (in relevant part) that the district court committed no error in denying the motion to dismiss counsel:

> [T]he district court conducted an inquiry into Jefferson's request. The court determined that Jefferson was unhappy because he believed his counsel had not provided to him everything obtained through discovery, and his counsel had not obtained his work records. Jefferson's attorney explained that the work records were not relevant and that leaving the records with a client in custody is risky because nothing is private in jail; however, he further expressed that he would provide anything Jefferson requested up to that point. We conclude that . . . the district court did not err in

denying the motion. The district court's inquiry demonstrates the conflict was minimal and could easily be resolved. Furthermore, Jefferson's request was untimely as it was made only a few days prior to trial.

*Jefferson v. State*, Docket No. 62120 (Order of Affirmance, July 29, 2014).

After his direct appeal was denied, Jefferson filed a timely petition for a writ of habeas corpus in the district court alleging that counsel had performed ineffectively for a variety of reasons, including by remaining as counsel despite an actual conflict of interest created once Jefferson filed his complaint with the Bar. The district court denied relief on all grounds. Jefferson now appeals from the denial of his postconviction petition. In this appeal, Jefferson expressly abandons all of the arguments raised below except that counsel was ineffective in continuing to represent him despite what he characterizes as a conflict of interest created by the filing of the bar complaint.

## ANALYSIS

The Sixth Amendment to the United States Constitution guarantees to every criminal defendant a right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Warden v. Lyons*, 100 Nev. 430, 683 P.2d 504 (1984). Normally, to state a claim of ineffective assistance of counsel sufficient to invalidate a judgment of conviction, a petitioner must satisfy a two-prong test: he must demonstrate that counsel's performance was deficient and that the deficiency prejudiced him. *Strickland*, 466 U.S. at 687. The petitioner must demonstrate the underlying facts by a preponderance of the evidence. *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004).

When a petitioner alleges that counsel has been ineffective, he is entitled to an evidentiary hearing only if he has "assert[ed] specific

factual allegations that are not belied or repelled by the record and that, if true, would entitle him to relief." *Nika v. State*, 124 Nev. 1272, 1300-01, 198 P.3d 839, 858 (2008). On appeal, we give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *See Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

The right to effective assistance of counsel includes the right to assistance "unhindered by conflicting interests." *Clark v. State*, 108 Nev. 324, 326, 831 P.2d 1374, 1376 (1992) (citing *Holloway v. Arkansas*, 435 U.S. 475 (1978)). A conflict of interest arises when counsel's "loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or by his own interests." *People v. Horton*, 906 P.2d 478, 501 (Cal. 1995) (internal quotation marks omitted); *see also* RPC 1.7(a); *Clark*, 108 Nev. at 326, 831 P.2d at 1376. When a defendant demonstrates that counsel was rendered ineffective because of "[a]n actual conflict of interest which adversely affects [the] lawyer's performance," prejudice is presumed and the defendant is relieved of the obligation to independently prove its existence. *Clark*, 108 Nev. at 326, 831 P.2d at 1376 (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). Whether a conflict exists is a mixed question of fact and law reviewed on appeal de novo, *see Cuyler*, 446 U.S. at 342, and "must be evaluated on the specific facts of each case," *Clark*, 108 Nev. at 326, 831 P.2d at 1376.

Below, Jefferson did not assert that his counsel did anything in response to the filing of the bar complaint that would independently entitle Jefferson to relief. Nor did Jefferson contend that his bar complaint led to the imposition of any discipline upon his attorney that rendered his counsel ineffective. Consequently, Jefferson's contention was not that the

complaint happened to trigger a chain of events that ended up producing an irreconcilable conflict between him and his attorney, but rather that the filing of the complaint, by itself, created an actual conflict without anything more happening.

Thus, Jefferson would have been entitled to relief only if, as a matter of law, the mere filing of his bar complaint created a per se conflict of interest rising to the level of a violation of the Sixth Amendment. The closest the Nevada Supreme Court has come to addressing this situation is in *Clark v. State*, 108 Nev. at 326, 831 P.2d at 1376. In *Clark*, the Nevada Supreme Court recognized that a constitutional violation could occur when a defense attorney filed a civil suit seeking monetary damages against his own client during the course of defending him against murder charges. *Id.* The court reasoned that the filing of the civil suit could have created an adverse financial interest that might have led counsel to be more conservative in handling the criminal case than he otherwise might have been. Although the attorney might have earnestly believed that his judgment was not compromised, "some attorneys might conclude that there is less incentive to interpose every available defense [in the criminal case], as an incarcerated client would be less apt to vigorously oppose an entry of default and subsequent enforcement of the civil judgment." *Id.* at 327, 831 P.2d at 1376. Thus, the court emphasized that attorneys should avoid entangling themselves in financial conflicts that might create "economic pressure" that could "adversely affect the manner in which at least some cases are conducted." *Id.* at 327, 831 P.2d at 1377 (quoting *Jewell v. Maynard*, 383 S.E.2d 536, 544 (W. Va. 1989)).

But the filing of a bar complaint by a defendant against his counsel differs from *Clark* in important ways. As an initial observation, the

conflict of interest in *Clark* was created by the self-interested actions of the attorney in suing his client. More importantly, unlike a civil suit for money damages, the filing of a bar complaint does not initiate head-to-head litigation between the attorney and client that could result in a collectible money judgment in favor of one party or another. Rather, a bar complaint is a request that the Bar conduct its own independent investigation of the attorney's behavior and impose appropriate disciplinary measures (frequently nonfinancial) against the attorney. *See generally* State Bar of Nevada, *Disciplinary Rules of Procedure* (2017); *see also* State Bar of Nevada, *Ethics and Discipline*, https://www.nvbar.org/member-services-3895/ethics-discipline/ (last visited August 11, 2017). Even where a Bar disciplinary action includes some kind of monetary fine or penalty, the fine would not be enforced by the client through adversary collection measures as in a civil suit, but rather would be enforced by the Bar itself. *See* State Bar, *Ethics and Discipline, supra* ("All investigations of possible attorney misconduct are conducted through the Office of Bar Counsel. In matters that warrant disciplinary action, bar counsel then prosecutes all disciplinary proceedings."). Therefore, we conclude *Clark* does not govern the outcome of the issue presented to this court.

Although the Nevada Supreme Court has not yet addressed this specific question, other courts have held, virtually unanimously, that the mere filing of a bar complaint against counsel does not automatically create a conflict of interest. *See State v. Michael*, 778 P.2d 1278, 1280 (Ariz. Ct. App. 1989) ("This defendant has not demonstrated any adverse effect from any alleged conflict of interest created when he filed a bar complaint against [his attorney]. Our review of the record finds none."); *Gaines v. State*, 706 So. 2d 47, 49 (Fla. Dist. Ct. App. 1998) ("Furthermore, the filing of a bar

complaint against the Office of the Public Defender does not automatically create a conflict of interest requiring the appointment of substitute counsel."); *Holsey v. State*, 661 S.E.2d 621, 626 (Ga. Ct. App. 2008) ("Specifically, Holsey argues that trial counsel should have withdrawn as his counsel after learning that Holsey had filed a bar complaint against him based on his dissatisfaction with his representation. We disagree. . . . A theoretical or speculative conflict will not impugn a conviction which is supported by competent evidence." (internal quotation marks omitted)).

We agree with the weight of authority and hold that, as a matter of law, the mere filing of a bar complaint by a defendant against his attorney does not create a per se conflict of interest rising to the level of a violation of the Sixth Amendment. The filing of a bar complaint ought not become a routine method of forcing a change in appointed counsel after a district court motion has failed, or of obtaining postconviction relief on manufactured or hypothetical premises, when no actual conflict of interest otherwise existed.

When an alleged conflict is initiated by the actions of a defendant, courts are, and ought to be, more suspicious about concluding that a constitutional violation has occurred than when the actions were initiated by the attorney. *See Carter v. Armontrout*, 929 F.2d 1294, 1300 (8th Cir. 1991) ("[A] pending lawsuit between a defendant and his attorney may give rise to a conflict of interest . . . . However, a defendant who files a lawsuit against his attorney does not necessarily create such a conflict."). In those cases, courts should be wary of the possibility that the defendant may be attempting to either manufacture a way to replace counsel or delay the prosecution of the case, or both. As stated by another court in denying a pretrial motion to disqualify appointed counsel based upon a lawsuit the

client filed against his counsel, "a criminal defendant's decision to file such an action against appointed counsel does not require disqualification unless the circumstances demonstrate an actual conflict of interest." *Horton*, 906 P.2d at 501; *see also Smith v. Lockhart*, 923 F.2d 1314, 1321 n.11 (8th Cir. 1991) ("We recognize the danger of any holding implying that defendants can manufacture conflicts of interest by initiating lawsuits against their attorneys.").

## *CONCLUSION*

Because we hold the filing of a bar complaint does not create a per se conflict of interest that rises to the level of a violation of the Sixth Amendment, and Jefferson did not assert that the filing of the bar complaint adversely affected his counsel's behavior or caused his counsel to defend him less diligently, he did not present a conflict-of-interest claim that would entitle him to relief. The district court therefore did not err by denying his claim without conducting an evidentiary hearing. Accordingly, we affirm the district court order denying Jefferson's postconviction petition for a writ of habeas corpus.

_____, J.
Tao

We concur:

_____, C.J.
Silver

_____, J.
Gibbons

Court of Appeals
OF
Nevada

(O) 1947B